THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUDOLPH LOUIS KESSLER, Defendant-Appellant.

(No. 72-39;

Second District—May 15, 1973.

Paul Bradley, of Defender Project, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (James W. Jerz, of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Rudolph Louis Kessler, the defendant, was convicted of one count of burglary and two counts of attempt murder after a jury trial. He appeals from the convictions and the concurrent sentences imposed of 2-5 years for burglary and 5-15 on each count of the attempt murder. He claims that the counts of the information charging attempt failed to charge an offense; that he was not proven guilty beyond a reasonable doubt either of burglary or of the attempts; and that trial errors deprived him of a fair trial.

From our review of the record, we first conclude that the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt of burglary, charged on accountability principles as defined in Ill. Rev. Stat. 1971, ch. 38, sec. 5—2(c).

Abney and Mass were the actual perpetrators of the burglary in the course of which the proprietor, Louis Cotti, who came upon them in the building, was shot. Abney and Mass were discovered in the Anchor Tap in Rockford about 1:30 A.M. on March 6, 1971. Mass wounded Cotti in the neck. Mass and Abney then fled and were observed in a 1962 white Chevrolet by a state trooper, Max L. Clevenger, who answered a report of the incident. After a high speed chase, Mass and Abney stopped their car and ran toward a corn field. Clevenger chased them and one of the individuals fired at him several times before being captured. The defendant Kessler then was found in the front seat of the white Chevrolet where he had remained when Abney and Mass ran from the car.

At the scene, the defendant stated to the officers that he was a hitchhiker and did not know what was going on. However, later defendant gave a voluntary statement which was introduced into evidence, in which he acknowledged that he was not a hitchhiker. He stated that he had been in Chicago the day prior to the burglary to see Mass and was then introduced by Mass to Abney; that he heard Mass ask a third person about getting a pistol, and the response that the individual could not get a pistol but would deliver a sawed-off shotgun to them that evening. Defendant stated that later in the day Mass said he needed a screwdriver and the three of them went to Sears where Mass purchased a small screwdriver and Abney "shoplifted" a larger one. Defendant stated that he heard Mass and Abney discuss disposing of stolen merchandise. He also heard Mass say that he needed $1800 to pay for his car. Defendant said that he told Mass that he once worked at the Anchor Tap in Rockford and had seen the receipts but that they "wouldn't get $1800 there."

The three left Chicago at 8:00 P.M., according to defendant's statement, and arrived in Rockford at approximately 10:30 P.M. After visiting several taverns, Mass said he wanted to go to the Anchor Tap and defendant directed him there. Mass and Abney went inside and had a drink but defendant stayed outside. The three later went to another tavern and returned to the Anchor Tap just after closing. They parked the car and Mass and Abney went around to the back of the building. Defendant stated that he remained in the front seat of the car and that shortly thereafter Mass and Abney jumped back in the car and raced away. Defendant said that he asked to be let out of the car and was refused.

Cotti testified that he had noticed the white Chevrolet when he passed the tavern after closing and that he let himself and another individual into the tavern through the rear door, discovering Mass and Abney behind the bar. He was then shot and wounded. Although he passed within 15 or 20 feet of the Chevrolet before he went in he did not observe any individual in the car when he looked toward the automobile. He at no time saw defendant in or around the building. He testified that the gun used in the shooting was his own gun taken in the tavern.

■■ Defendant, who did not testify, claims that the evidence fails to contradict his statement that he was not connected with the activities of Mass and Abney and that therefore the State did not prove accountability beyond a reasonable doubt. However, there was evidence from which the jury could reasonably conclude that Mass, Abney and the defendant had agreed to the burglary of the Anchor Tap and that the defendant had assisted in the burglary, even though there was no direct evidence that he acted as a lookout. He was therefore responsible for the acts in furtherance of the plan by Mass and Abney and it was not necessary to prove that Kessler himself had the intent to enter the building. See *People v. Nowak* (1970), 45 Ill.2d 158, 168; *People v. Rybka* (1959), 16 Ill.2d 394, 405; *People v. Brendeland* (1957), 10 Ill.2d 469, 471, 472.

The appeal from the convictions under the two counts of attempt murder presents a different, and we think, a more difficult question. Mass, who did the shooting, clearly had the specific intention to commit the attempt murders. Abney who was inside the tavern with Mass could possibly also have been shown to have shared an intent to kill by aiding and abetting Mass. However, on this record there is no proof of conduct by the defendant Kessler which the jury could consider in connection with other circumstances to reach the conclusion that he assented to the commission of the crimes of attempt murder or was aiding and abetting them. The information under which the defendant was charged alleged that each of the attempts were "with intent to commit the offense of

murder * * *". However, consistent with the evidence the entire theory of the State has been that the intent which Mass and Abney possessed must be implied to be the intent of Kessler, presumably since there was no proof that Kessler had such specific intent.

■■ Since defendant Kessler could not be liable under the "felony-murder" doctrine, which we have held does not extend to attempts (see *People v. Farnsworth* (1973), 10 Ill.App.3d 844,[1] *People v. Davis* (1972), 6 Ill.App.3d 622, 627-628; see also 1 Wharton, Criminal Law and Procedure (12th ed. 1957), sec. 73, Attempt, pp. 155-6.), the question before us is whether Kessler can be found guilty on accountability principles without proof of his specific intent to commit the attempt murders perpetrated by Mass and Abney.

Section 5—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2) pertinently provides:

"Sec. 5—2. A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *"."

Under the plain language of the statute, one cannot be held accountable unless found to have the specific intent to commit or aid in the commission of the substantive crime for which he is being held accountable. See Smith-Hurd Annotated, ch. 38, sec. 5—2, Committee Comments; *People v. Tillman* (1971), 130 Ill.App.2d 743, 750; *People v. Brumbeloe* (1968), 97 Ill.App.2d 370, 375; *People v. Ramirez* (1968), 93 Ill.App.2d 404, 410-411.

■■ The Committee Comments and the cited cases address themselves to a question of accountability for a single crime on the part of an alleged accomplice; whereas here we have determined that defendant was accountable for one crime (burglary) and the precise issue then becomes one of determining defendant's accountability for further crimes (two attempted murders) committed completely outside of defendant's presence and with no evidence of defendant's participation or intent to participate in them. Our analysis of the provisions of the Criminal Code requires the conclusion that except in felony-murder cases, the

---

[1] In *Farnsworth*, we recently noted the incongruity of the Code provisions which may result in a finding of guilt of murder on felony-murder principles under Ill. Rev. Stat. 1971, ch. 38, sec. 9—1(a)(3), without proof of specific intent, if the victim dies; and yet if the victim lives, result in a finding that the perpetrator could not be found guilty of attempt murder without proof of specific intent.

Code does not impose liability on accountability principles for all consequences and further crimes which could flow from participation in the initial criminal venture, absent a specific intent by the accomplice being held accountable to commit, or aid and abet the commission of, such further crimes.

The Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 1—1 *et seq.*) by its terms is to be construed to "define adequately the act and mental state which constitute each offense, and limit the condemnation of conduct as criminal when it is without fault." (Par. 1—2(b).) The only mental state adequately defined under section 5—2(c) and consistent with limiting criminality where it is without fault is that mental state requiring a specific intent[2] to aid the crime for which the person is being held accountable. Section 4—9 of the Code excuses proof of a particular mental state described in the Code only if "* * * the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described". We are unable to find clear evidence of such legislative purpose.

■■■ Criminal statutes are to be construed strictly in favor of the accused and nothing is to be taken by intendment or implication against the accused beyond the obvious or literal meaning of such statutes. (*People v. Eagle Food Centers, Inc.* (1964), 31 Ill.2d 535, 539.) We also bear in mind that section 1—3 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 1—3) provides that no conduct constitutes an offense "unless it is described as an offense in this Code or in another statute of this State * * *", so that the Code abolishes common law and extra-code principles of accountability. See, *e.g.*, Committee Comments to section 8—1, Solicitation, which was, prior to the Code, only a common law offense.

■■ In this case the State has asked that we impute or imply to Kessler the acts of his co-burglars in the attempted murders and their intent to commit them. The State cites *People v. Chavis*, (1967), 79 Ill. App.2d 10; *People v. Novak* (1967), 84 Ill.App.2d 276, and relies on the oft-quoted principle that where defendants have a common design to do an unlawful act, then whatever act any one of them does in furtherance of the common design is the act of all and all are equally guilty of whatever crime is committed. The application of this principle is appropriate

---

[2] Intent as used in the accountability statute, is defined in section 4—4. It is limited to a conscious objective or purpose to accomplish the desired result. This intent must be found by the trier of facts and cannot be implied as a matter of law. *People v. Uselding* (1969), 107 Ill.App.2d 305, 309; *People v. Lloyd* (1922), 304 Ill. 23, 94.

only where justified by the Code's statutory language, such as in cases involving felony-murder, where intent to murder need not be shown (*e.g.*, *People v. Armstrong* (1969), 41 Ill.2d 390; *People v. Nowak* (1970), 45 Ill.2d 158); in cases where the acts imputed are those which constitute the original crime contemplated by the common design (*e.g.*, *People v. Littleton* (1969), 113 Ill.App.2d 185; *People v. Bristow* (1972), 8 Ill.App.3d 805, 810; *People v. Harris* (1971), 132 Ill.App.2d 801); and in cases involving two related crimes where defendant aided and shared an intent that both be committed. (*E.g.*, *People v. Cole* (1964), 30 Ill.2d 375; *People v. Gant* (1970), 121 Ill.App.2d 222; *People v. Williams* (1968), 104 Ill.App.2d 329.) The application of the "common design" principle is not justified by the language of section 5—2 to hold a defendant accountable for crimes committed by an accomplice which the defendant was not shown to have intended. Imputed or implied intent is clearly outside the contemplation of the statute on accountability in the factual situation before us.[3]

Other provisions of the Code also fortify this conclusion. For example, conspiracy (Ill. Rev. Stat. 1971, ch. 38, par. 8—2) has elements similar to accountability to assess responsibility to co-conspirators. (See *Pinkerton v. United States* (1964), 328 U.S. 640, 647-8.) In construing and explaining liability under the conspiracy statute, the Committee Comments include the language that the agreement of the alleged co-conspirators must be accomplished with "intent that the offense *which is the object of the agreement be committed*". (Emphasis added.) It should also be noted that only in very special circumstances and by express provision does the Code impose liability for unlawful conduct without requiring a specific intent. *E.g.*, Ill. Rev. Stat. 1971, ch. 38, par. 9—1(a)(3) (felony-murder, which does not include attempts); Ill. Rev. Stat. 1971, ch. 38, par. 9—3 (reckless homicide, which usually involves an intentional

---

[3] See n. 2 *supra*. We add the comment that in our view the Code provision before us substantially departs from prior Illinois law as well as much of the current law in other jurisdictions on the law of acountability. Essentially these cases provide that one who advises or encourages another to do an illegal act is responsible for all the natural and probable consequences which may arise from its perpetration, but that it is otherwise if the principal totally and substantially varies from the terms of the advice and encouragement so as to commit another and distinct crime which is not the natural or probable result of the encouragement. 2 Moore, Illinois Criminal Law and Procedure, Sec. 1103, Accessories (3d ed. 1932), page 769. (See *Hamilton v. People* (1885), 113 Ill. 34, 37, 38; *Lamb v. People* (1880), 96 Ill. 73; *People v. Basile* (1934), 356 Ill. 171; *People v. Faught* (1931), 343 Ill. 312; *White v. People* (1891), 139 Ill. 143.) We think this is a more reasonable approach to the law of accountability but one which we cannot adopt in contravention of the language in the Code.

violation of another law such as driving while intoxicated); Ill. Rev. Stat. 1971, ch. 38, par. 11—5 (contributing to the sexual delinquency of a child).

■■ Under the Criminal Code the defendant Kessler was not proved guilty beyond a reasonable doubt of the attempt murder charges and the convictions of attempt murders are reversed.

In the view we have taken we do not reach the sufficiency of the indictment nor the question raised by the defendant that the instructions which permitted the jury to find the defendant guilty of attempt murder absent a finding of specific intent to kill constituted reversible error.

Defendant has also complained that the court improperly denied his motion to require police officers to be made available to discuss the case with him and that this constituted prejudicial error. While there was testimony that there was an unwritten policy of the police department that no officer discuss a pending criminal case with anyone but a superior officer or State's Attorney, it is clear from the record that the question whether the individual policeman would discuss a case with defense counsel was left to his discretion. The record reveals that defense counsel was given a reasonable opportunity to see the police witnesses and that the department was willing to accommodate him in arranging to see them. No prejudice appears from the record. See *People v. Glover* (1971), 49 Ill.2d 78, 83.

While Supreme Court Rule 415(a) (Ill. Rev. Stat. 1971, ch. 110A, sec. 415(a)) was not in effect at the time of the trial, it would not have compelled a different result since there is no evidence that the officers were advised not to discuss the case with opposing counsel or to otherwise impede his investigation of the case.

■■ Defendant finally argues that he was denied a fair trial because the prosecutor in closing argument over objection gave erroneous examples of the law of accountability. The objection made by defendant at trial was not to the explanation of the law of accountability, referred to by the prosecutor, but to the fact that he was giving examples. In the context of the argument we do not find that this raises a substantial issue of reversible error.

While the case was under advisement the defendant filed a motion for summary modification of sentence. Since the judgments of conviction under the attempt murder charges are reversed, we need consider only the burglary conviction. It is now classified as a class 2 felony (Ill. Rev. Stat. (1972 Supp.), ch. 38, par. 19—1 (b)), providing for a maximum of 20 years and a minimum of 1 year, unless the court sets a higher minimum under the terms of the Code, limited to one-third of the maximum term. The minimum term of 2 years here is not permitted now when the

maximum has been set at 5 years by the court below. Under the circumstances, we modify the burglary sentence, and as modified the minimum sentence shall be not less than 1 year and 8 months and the maximum not more than 5 years. As modified, the conviction for burglary is affirmed and the cause remanded with directions to issue an amended mittimus in compliance with the Code.

Affirmed in part as modified, and remanded for issuance of amended mittimus; reversed in part.

GUILD, P. J., and T. MORAN, J., concur.