(No. 46011.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RUDOLPH LOUIS KESSLER, Appellee.

*Opinion filed July 1, 1974.*

GOLDENHERSH, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Phillip G. Reinhard, State's Attorney, of Rockford (James B. Zagel, Assistant Attorney General, of counsel), and James W. Jerz and Edward N. Morris, of Elgin, of Model State's Attorneys Office, for the People.

Richard J. Wilson, Assistant Appellate Defender, and Peter B. Nolte (Senior Law Student), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

In a jury trial in the circuit court of Winnebago County, defendant, Rudolph Louis Kessler, was convicted on one count of burglary and two counts of attempted

murder. The appellate court affirmed the burglary conviction and reversed the attempted-murder convictions (11 Ill. App. 3d 321), and we allowed the People's petition for leave to appeal. The facts are stated in the opinion of the appellate court and will be restated here only to the extent necessary to more fully delineate the issues. Defendant waited in an automobile outside a tavern while his two unarmed companions entered the building to commit the burglary. While inside the tavern, they were surprised by the owner, and one of the burglars shot and wounded him with a gun taken during the burglary. Later, while defendant's companions were fleeing on foot, one of them fired a shot at a pursuing police officer. At that time defendant was sitting in the automobile.

The evidence established that on the day before the burglary in question, the defendant went to Chicago to see Ronald Mass, who introduced him to Rodney Abney. The three men went to a restaurant and drank coffee, where the defendant heard Mass ask another person about obtaining a pistol. The person stated he could not obtain a pistol, but would get a sawed-off shotgun by 8 o'clock that evening.

Later Kessler, Mass and Abney went to a store where Mass purchased a screwdriver while Abney simultaneously shoplifted one. Mass indicated that he had to "put his hands on" $1800. Kessler told Mass that he recalled seeing quantities of cash at the Anchor Tap, where he had previously been employed.

The three men left Chicago about 8 p.m. and arrived at the Anchor Tap in Rockford about 10:30 p.m. Mass and Abney went into the Tap, had a drink, used the bathroom facilities through which they later gained access to the building, and then returned to Kessler, who had remained in the car. They then went to another bar for a drink and then returned to the Anchor Tap.

Just as they parked the car there, Louis Cotti, a co-owner of the Tap, came out to go home. He drove past

the parked car as he left and then returned. He testified that he looked around, saw no one at the front of the tavern, then went to the rear of the building, entered the rear door and saw Abney and Mass up at the bar. He then left the building by the rear door and went across the street to a restaurant to call the police and to get help. Thereupon, Cotti and another man from the restaurant returned to the Tap and entered the rear door. Mass, who had found a pistol at the bar, then shot Cotti in the neck. Mass and Abney then fled from the bar and entered the car where Kessler sat. Mass drove the car from the Tap and was pursued by the police. Mass was forced off the road and into a ditch. Mass and Abney ran from the car. Kessler remained seated. Abney started shooting at the police, who had arrived at the scene. After an exchange of gunfire, one police officer ordered the defendant from the car and frisked him. As the defendant climbed from the car, and before being advised of his rights, the defendant said, "I don't know what's going on all the shooting. I was just hitchhiking." The defendant was then advised of his rights and was taken to Rockford in a squad car where he later at the police station made an inculpatory oral and a written statement.

In reversing the attempted-murder convictions, the appellate court held that "The application of the 'common design' principle is not justified by the language of section 5–2 to hold a defendant accountable for crimes committed by an accomplice which the defendant was not shown to have intended." (11 Ill. App. 3d 321, 327.) And, at page 325, the court stated: "*** the question before us is whether Kessler can be found guilty on accountability principles without proof of his specific intent to commit the attempt murders perpetrated by Mass and Abney." The court further stated that "except in felony-murder cases, the Code does not impose liability on accountability principles for all consequences and further crimes which could flow from participation in the initial criminal

venture, absent a specific intent by the accomplice being held accountable to commit, or aid and abet the commission of, such further crimes." 11 Ill. App. 3d at 325-326.

The People argue "that a person is responsible for all criminal violations actually committed by another if he assists another in the commission of a single criminal violation," and that "if the legislature had intended to limit accomplice liability only to further criminal acts which were specifically intended the word 'conduct' would not have been included in the language of section 5—2."

Sections 5—1 and 5—2 of the Criminal Code provide in pertinent part:

"Sec. 5—1. Accountability for *conduct* of another.

A person is responsible for *conduct* which is an element of an offense if the *conduct* is either that of the person himself, or that of another and he is legally accountable for such *conduct* as provided in Section 5—2 or both." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 38, par. 5—1.

"Sec. 5—2. When Accountability Exists.

A person is legally accountable for the *conduct* of another when:

\* \* \*

(b) The statute defining the offense makes him so accountable; or

(c) Either before or during the commission of *an offense* and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. \*\*\*" (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 38, par. 5—2.)

*"Conduct"* is defined as:

"\*\*\* an act or a series of acts, and the accompanying mental state." Ill. Rev. Stat. 1971, ch. 38, par. 2—4.

The People argue that the appellate court disregarded the plain meaning of legal doctrines applied by this court and by the highest courts of other jurisdictions, *i.e.,* that where two or more persons engage in a common criminal design or agreement, any acts in the furtherance thereof

committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts; and that the court made an unsound and unwarranted interpretation of section 5—2 of the Illinois accountability statute (Ill. Rev. Stat. 1971, ch. 38, par. 5—2).

We believe the statute, as it reads, means that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word "conduct" encompasses any criminal act done in furtherance of the planned and intended act.

An early application of this rule is found in *Hamilton v. People* (1885), 113 Ill. 34. The defendant and two companions invaded a watermelon patch intending to steal some melons. The owner discovered them and a scuffle or fight ensued during which the owner pinned one of the three to the ground, and when in this position another of the three fired a gun at the owner, but the shot missed the owner and struck the potential watermelon thief, who the owner had thrown to the ground. During this occurrence, the third potential watermelon thief stood by. All three of the putative watermelon thieves were charged and convicted of assault with intent to commit murder. This court, at pages 37 and 38, stated:

> "The fact is undisputed that the three defendants, one of whom was armed with a pistol, invaded the premises of the prosecuting witness with a criminal purpose. The business upon which the parties had deliberately entered was a hazardous one. They had a right to expect that in the event they were detected in stealing the melons, it would result in violence endangering life or limb,—as it actually turned out afterwards. That they were all co-conspirators in a dangerous criminal enterprise, is an undisputed fact. Such being the case, whatever was done by one, in

contemplation of law was done by all, and all are therefore equally responsible."

In the case at bar, the record shows a common design to commit a robbery or burglary. Kessler, Mass and Abney sat in on the plan, and Kessler led Mass and Abney to the Anchor Tap where he stated the day's receipts were kept.

In *People v. Cole* (1964), 30 Ill.2d 375, at page 379, the court stated:

"While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime. (*People v. Torres,* 19 Ill.2d 497; *People v. Thicksten,* 14 Ill.2d 132; *People v. Cione,* 293 Ill. 321.) Stated differently, circumstances may show there is a common design to do an unlawful act to which all assent, and whatever is done in furtherance of the design is the act of all, making each person guilty of the crime. *People v. Rybka,* 16 Ill.2d 394; *People v. Marx,* 291 Ill. 40; *People v. Washington,* 26 Ill.2d 207, 209."

A similar conclusion was reached in *People v. Hubbard* (1973), 55 Ill.2d 142, where, at pages 147 and 148, in considering the problem at issue, we referred to *People v. Armstrong* (1968), 41 Ill.2d 390, wherein the court, at pages 398 and 399, stated as follows:

"The next contention of defendants involves a request to depart from the long established common-design rule, *i.e.,* that where defendants have a common design to do an unlawful act,

then whatever act any one of them does in furtherance of the common design is the act of all and all are equally guilty of whatever crime is committed. (*People v. Tarver,* 381 Ill. 411.) \*\*\* We have fully reiterated our support of this rule in recent cases, *People v. Rybka,* 16 Ill.2d 394; *People v. Johnson,* 35 Ill.2d 624, and we continue to do so in this case. Nor do we accept defendants' argument that the statutorily defined rules on accountability (Ill. Rev. Stat. 1965, chap. 38, par. 5—2) in any way modify or abrogate the common-design rule. This section provides that a person is legally accountable for the conduct of another when '(c) Either before or during the commission \*\*\* he solicits, aids, abets, or agrees or attempts to aid, such other person in the planning or commission of the offense.' Applying this section to this case the attempted robbery was the offense which the defendants were jointly committing and each was legally accountable for the conduct of the other. The result was murder, the killing of an individual without lawful justification while attempting or committing a forcible felony other than voluntary manslaughter. Ill. Rev. Stat. 1965, chap. 38, par. 9—1(a)(3)."

In applying the rationale of *Armstrong* to the case at bar, the burglary was the offense which the defendant, Mass, and Abney had jointly planned and were jointly committing, and each was legally accountable for the conduct of the other in connection therewith. The result was the offense of attempted murder of Louis Cotti, the tap owner, and of State Trooper Max L. Clevenger, who answered a report of the incident and who tried to apprehend the fleeing parties.

For the foregoing reasons, we affirm the part of the appellate court decision which affirmed the burglary conviction of the defendant, and we reverse the part of its decision which reversed the conviction of the defendant

for attempted murder, and we affirm the judgment of the circuit court.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. In its well-reasoned opinion the appellate court correctly reversed defendant's attempt murder convictions and its judgment should be affirmed. The majority opinion is grounded on the assertion that section 5—2 of the Criminal Code "means that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word 'conduct' encompasses any criminal act done in furtherance of the planned and intended act." (57 Ill.2d at 497.) To an extent this interpretation is of course correct, but as will be demonstrated neither the statute nor the cases cited in the opinion support the conclusion reached by the majority. In pertinent part section 5—2 provides:

> "A person is legally accountable for the conduct of another when:
> * * *
> (b) The statute defining the offense makes him so accountable; or
> (c) Either before or during the commission of an offense and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. ***" Ill. Rev. Stat. 1971, ch. 38, par. 5—2.

It is clear that defendant's accountability cannot stem from section 5—2(b) for the simple reason that the statute defining the offense of attempt murder does not make him so accountable. In support of its position the majority cites *People v. Armstrong,* 41 Ill.2d 390, and quotes at length from *People v. Hubbard,* 55 Ill.2d 142. These cases are clearly not in point. They involved defendants charged with murder and fall under section 5—2(b) for the reason

that section 9—1(3) of the Criminal Code creates the "felony murder" classification and obviates the need of proof of intent. It should be further noted that *People v. Tarver,* 381 Ill. 411, *People v. Rybka,* 16 Ill.2d 394, and *People v. Johnson,* 35 Ill.2d 624, cited in and relied upon in *Armstrong* were also murder cases and are not relevant here.

The majority also quotes from *Hamilton v. People,* 113 Ill. 34, and *People v. Cole,* 30 Ill.2d 375. In *Hamilton* there was a common design to burglarize a watermelon patch, one of the co-defendants was armed, all were present and took part in the fight which followed their being accosted by the farmer whose melons they were stealing and the court applied a common design theory. The rationale of *Cole* is the basis on which the appellate court affirmed, correctly, defendant's conviction on the burglary charge but neither *Cole* nor *Hamilton* can be read so as to stretch the statute to cover the facts of this case.

The Committee Comments to section 5—2(c) *inter alia* state:

> "Subsection 5—2(c) is a comprehensive statement of liability based on counseling, aiding and abetting and the like, which includes those situations that, at common law, involve the liability of principals in the second degree and accessories before the fact. It will be observed that liability under this subsection requires proof of an 'intent to promote or facilitate *** commission' of the substantive offense. Moreover, 'conspiracy' between the actor and defendant is not of itself made the basis of accountability for the actor's conduct, although the acts of conspiring may in many cases satisfy the particular requirements of this subsection." S.H.A., ch. 38, par. 5—2, p. 288.

It should be noted that emphasis is placed on the requirement of proof of an "intent to promote or facilitate *** commission of the substantive offense" and the Criminal Code provides:

> "A person intends or acts intentionally or with intent, to accomplish a result or engage in conduct

described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." Ill. Rev. Stat. 1971, ch. 38, par. 4—4.

The substantive offense involved is attempt murder and section 8—4(a) of the Code provides that the requisite elements of the offense of attempt are the intent to commit a specific criminal offense and the doing of an act which constitutes a substantial step toward the commission of that offense. The gist of the crime of assault with intent to commit murder, the statutory predecessor of attempt murder, was the specific intent to take life (*People v. Palmer,* 31 Ill.2d 58; *People v. Coolidge,* 26 Ill.2d 533), and the gist of the crime of attempt murder as defined in the Criminal Code is the specific intent to take life. As pointed out by the appellate court, had either of the intended victims died, the provisions of section 9—1(3) of the Criminal Code would have served to make the defendant accountable, but the attempt statute contains no such provision.

Section 1—3 of the Criminal Code provides that no conduct constitutes an offense unless made so by the Code or another statute and in *People v. Eagle Food Centers, Inc.,* 31 Ill.2d 535, at page 539, the court said:

"By well settled principles of law, a criminal or penal statute is to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of such statutes. (*People v. Kirkrand,* 397 Ill. 588; *People v. Lund,* 382 Ill. 213.) This is so, according to Sutherland, Statutory Construction, 2d ed., vol. II, sec. 520, because 'the penal law is intended to regulate the conduct of people of all grades of intelligence within the scope of responsibility,' and it is therefore 'essential to its justice and humanity that it be expressed in language which they can

easily comprehend; that it be held obligatory only in the sense in which all can and will understand it.' And apart from the principle of strict construction, we are, as in the case of civil statutes, bound to the rules which require us to give effect to a legislative intention expressed in clear and unambiguous terms and forbid us from altering the plain meaning of the words employed by forced or subtle construction."

I submit that on this record the defendant was not proved guilty of attempt murder. The evidence is uncontradicted that when his companions embarked on the burglary they were unarmed and that he was not inside the tavern when the shot was fired. Again, when the shot was fired at the pursuing officer, defendant was in the automobile, and under the circumstances neither occurrence is shown to be a consequence of any action of the defendant from which the requisite specific intent could be inferred.

I agree with the appellate court that section 5—2(c) does not impose liability for all consequences which flow from participation in the initial criminal venture and that there is no proof here of the requisite specific intent, and would affirm the judgment.