2025 IL App (1st) 230943-U
No. 1-23-0943

FIRST DIVISION
March 24, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 05 CR 13942 |
| | ) | |
| DOUGLAS DAVIS, | ) | The Honorable |
| | ) | Robert J. Clifford, |
| Defendant-Appellant | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1  *Held:* (1) The State proved beyond a reasonable doubt that defendant committed aggravated kidnapping based on an accountability theory. (2) Trial counsel provided effective assistance of counsel during jury selection. (3) The State's comments regarding defendant's trial absence were not improper. (4) Defendant's conviction for vehicular hijacking violates the one-act, one-crime doctrine.

¶ 2  Defendant Douglas Davis appeals his conviction and sentence for aggravated kidnapping and vehicular hijacking. Defendant argues four issues on appeal: (1) the State failed to prove him guilty beyond a reasonable doubt of aggravated kidnapping predicated on vehicular hijacking because the State presented insufficient evidence regarding his accountability for his co-

defendant's taking of Threat's vehicle; (2) trial counsel provided ineffective assistance of counsel for failing to use a peremptory strike on juror B. Skinner, and for failing to challenge or strike a number of other jurors; (3) that the State's closing argument prejudiced him and deprived him of his right to a fair trial; and (4) this court should vacate his conviction for vehicular hijacking under the one-act, one-crime doctrine since it is based on the same predicate offense as his aggravated kidnapping conviction. We affirm his conviction for aggravated kidnapping and vacate his conviction for vehicular hijacking.

¶ 3                                    BACKGROUND

¶ 4        A grand jury indicted defendant for two counts of aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2004)) and one count of vehicular hijacking (*id*. § 18-3(a)), with the vehicular hijacking count constituting the aggravating factor for the aggravated kidnapping counts. Count one for aggravated kidnapping alleged that defendant knowingly and secretly confined the victim against her will and committed another felony upon the victim, vehicular hijacking. Count two for aggravated kidnapping alleged that defendant, by force or threat of imminent force, carried the victim from one place to another with intent secretly to confine her against her will, and committed another felony upon the victim, vehicular hijacking. Count three for vehicular hijacking alleged that defendant knowingly took a motor vehicle from the victim or the immediate presence of her by use of force or threat of imminent force.

¶ 5        The circuit court admonished defendant in open court that his failure to appear may result in a trial *in absentia*. The State proceeded to trial on all counts. Defendant posted bond but failed to appear at trial, which proceeded *in absentia*.

¶ 6                                   Jury Selection

¶ 7        During *voir dire*, prospective juror S. Aurelio disclosed that her neighbor and friends were victims of violent crimes.  She stated that some of her family members worked in law enforcement, and she maintained personal and professional relationships with the Homewood police force. She affirmed that nothing about the nature of those incidents or her relationships with law enforcement caused her concern about her ability to be fair and impartial in this case.

¶ 8        Prospective juror C. Arroyo disclosed that two of her cars had been stolen, her daughter's car had been vandalized, and a couple of her students had been kidnapped. She discussed her relationship with the police officers that she worked with in her capacity as a principal. She admitted that she trusted the police officers that she worked with. She affirmed that nothing about the nature of those incidents or her relationships with law enforcement caused her concern about her ability to be fair and impartial in this case.

¶ 9        Prospective juror C. Alexander disclosed that he did not know any police officers. He initially stated that he would give a police officer's testimony more weight. Following a discussion with the court, he affirmed that he would not judge a police officer as more credible than any other witness.

¶ 10        Prospective juror D. Jackson disclosed that she had worked as a correctional officer for fourteen years. She affirmed that nothing precluded her from being fair and impartial and that she would not judge a police officer as more credible than any other witness.

¶ 11        Prospective juror H. Stuenkel disclosed that he and his family member had been victims of crimes. He affirmed that nothing about these incidents would prevent him from being fair and impartial.

¶ 12 Prospective juror L. Collins, who served as an alternate, affirmed that nothing about her previously filed domestic violence complaint against her husband, or her friendship with a Cook County Sheriff employee would prevent her from being fair and impartial.

¶ 13 Prospective juror B. Skinner disclosed that her brother-in-law had been a victim of armed robbery, and a family friend had been the victim of home invasion. She affirmed that nothing about those incidents would prevent her from being fair and impartial. She also disclosed that her uncle had been convicted of federal drug charges. The court then questioned B. Skinner:

> Q. Do you understand that being fair and impartial means if the State proves its case beyond a reasonable doubt, you will be required to return a guilty verdict?
>
> Would you be able to do that?
>
> A. Yes.
>
> Q. And conversely, if the State was unable to prove its case beyond a reasonable doubt, would you be able, that would require you to return a not guilty verdict.
>
> Would you be able to do that?
>
> A. Yes.
>
> ***
>
> Q. Do you know any police officers or anybody involve[d] in any law enforcement field?
>
> A. Our police chief in Brookfield and Brookfield is a small community.
>
> Yes, I do know a few of the officers, also.
>
> Q. Okay.
>
> A. On a social acquaintance type of scenario, yes.
>
> Q. Is there anything about that that would cause you any concern about your ability to be fair and impartial?
>
> A. No.
>
> Q. If a police officer was called to testify in this case, would you give more or less weight to that person's testimony simply because of the fact that they are police officers?
>
> A. The respect that I have for the police officers, I don't know if I could answer that honestly.
>
> Q. Well, I need you to answer it honestly because that is the hallmark of this whole scenario.
>
> So let me ask you, when people come up here and testify, they will take an oath to tell the truth.
>
> You, as a member of the jury, would determine the witness' credibility.

What I am asking you is, if a police office came up to testify, sat in that chair, would you automatically put more, give them more credibility, more weight to his testimony simply because they're a police officer, or would you evaluate what that person says the same as any other witness that came up to testify?

A. I would have to say I would go with the police officer.

Q. You would believe, regardless, just simply because they're a police officer, you would believe them over anybody and not evaluate them the same as anybody.

A. I would be—I would be as fair as I could be.

¶ 14    In chambers, defense counsel moved to strike B. Skinner for cause. The circuit court denied defense counsel's request. The court informed defense counsel that it engaged in normal rehabilitation of a juror and believed that B. Skinner could be fair. The court reminded defense counsel that he had one peremptory challenge left. Defense counsel did not use his peremptory challenge and accepted the jury panel. At this point, the alternate jurors had already been questioned.

¶ 15                              Trial and Sentencing

¶ 16    Cathie Threat testified that on May 17, 2005, she drove home to her Calumet City apartment. After parking her stick-shift Saturn SUV in a well-lit parking lot, she noticed a van with its engine running. She exited her vehicle and reached into her backseat to retrieve her school bag when two men grabbed her. Neither man wore anything to obscure his face. She screamed and struggled, but one man pulled her into the van. While she could not see the man behind her, she identified the one in front as the person who forced her onto the van's floor and later exited the passenger side of the van. Inside, he tied her hands behind her back, and although her head was covered by a blanket, she had multiple chances to see his face. She also noticed a woman in the driver's seat. After some time, the van stopped, and she scrambled out. She spotted

some squad cars and police officers. She saw the police pull the defendant from the van. She identified both her SUV and the van in photographs at trial.

¶ 17    Kenya Washington testified that, while working in her bedroom on the evening of May 17, 2005, she heard a muffled scream and witnessed a man pulling a woman into a van and covering her mouth. The woman kicked and screamed as the man pulled her into the van. Washington called the police and then watched the van drive away. Shortly after, another man approached the victim's SUV from the direction the van drove off in, gathered the items scattered on the ground, and drove off in the SUV. At trial, Washington identified the van and SUV but did not identify the abductor.

¶ 18    Richard Jones, an off-duty police officer, testified that he heard a scream and a car alarm. He looked out his window and observed a gray SUV with its rear door open. He recognized the SUV as belonging to someone in the complex, but he did not see the owner or anyone else when he looked out. He also noticed a brown van in the lot. He heard the vehicle start, but it sounded as though the vehicle stalled. He recalled that earlier when he parked in the lot, he observed a brown van that he did not recognize. He left his apartment and called the police. When he arrived downstairs, he witnessed the SUV leaving the parking lot. He followed the SUV, and later witnessed police stop the brown van. Jones identified the SUV and van in photographs but did not identify the defendant.

¶ 19    Sergeant Begeske testified that on May 17, 2005, he received a call about a possible kidnapping near Williams Street. When he received the call, he was only a few blocks away from Williams Street. As he approached Williams Street, he noticed a van with a female driver matching the dispatch description. After stopping the van, he instructed the male passenger to exit the van. He then observed a distraught woman exit the van. He identified defendant as the

male passenger of the van from photographs at trial. He also identified the van and the driver, Rita Carradine.

¶ 20        Detective George Barich testified that he interviewed defendant and informed him of his *Miranda* rights. Defendant initially denied any involvement in the kidnapping. The following day, the defendant admitted his involvement in the kidnapping. Defendant explained that he had been approached by Chinaman. Chinaman offered to forgive a debt if he helped him with the kidnapping. Defendant also informed Barich that he, Chinaman, and his girlfriend, Carradine, waited for the victim in the parking lot. When she arrived, defendant grabbed her and forced her into the van. Chinamen then retrieved the victim's SUV. Defendant stated that Carradine was unaware of the plan and was a passenger.

¶ 21        Barich maintained a written summary of defendant's admission. Defendant did not write or sign the written summary. Defendant later admitted his involvement to two State's attorneys. When the State's attorneys began transcribing his admission, he decided that he no longer wanted to proceed. The State rested.

¶ 22        In closing argument, defense counsel argued:

> "I want to address something before we get into evidence and the law. It is really about my client's stupidity. For that reason he is not here, and the State can argue he is not here because, for whatever reason they want to attach to his absence, but truly it is his decision whether he wants to be here or not and whether he has adequate faith in me to promote a truth-testing mission for him. And I call him, for lack of a better word, stupid because, you know, I think that the State's case is about as flimsy as the photograph."

In rebuttal, the State argued:

> "Ladies and gentlemen, counsel in his opening statements and closing arguments referred to his client as being reduced to just a photograph. But have no doubt, this defendant reduced himself to a photograph because he did not have the courage to face Cathie Threat. He did not have the courage to

> come to court to address own words to Officer [Barich] and the Assistant State's Attorney that came and took his statement."

Defense counsel objected and the circuit court overruled his objection. The State continued, "He does not have the courage to come to court to face his actions. He is just a photo because he knows he is guilty. His absence here in court can absolutely be considered by you as consciousness of his guilt***."

¶ 23        The circuit court instructed the jury on legal accountability. The jury found defendant guilty of all counts. Defense counsel filed a posttrial motion arguing insufficiency of the evidence and improper comments by the State during closing arguments. The circuit court denied the motion. The circuit court sentenced defendant to 30 years' imprisonment on the two aggravated kidnapping counts, which merged, and a concurrent sentence of 15 years' imprisonment on the vehicular hijacking count. We allowed a late notice of appeal following our remand in *People v. Davis*, 2022 IL App (1st) 200467.

¶ 24                                    ANALYSIS

¶ 25                          Sufficiency of the Evidence

¶ 26        Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated kidnapping predicated on vehicular hijacking because the State presented insufficient evidence regarding his accountability for his co-defender's taking of Threat's vehicle. He contends that the State failed to show he possessed the specific intent to steal the SUV, or that his and Chinaman's plan involved stealing the SUV. The State responds that defendant is legally accountable for the hijacking of Threat's vehicle since he seized her and dragged her away from her SUV and into the van.

¶ 27    When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Collins*, 106 Ill. 2d at 261. Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 28    "Circumstantial evidence is proof of facts that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 19. A criminal conviction may be based solely on circumstantial evidence. *People v. Brown*, 2013 IL 114196, ¶ 49. We apply the same standard of review "regardless of whether the evidence is direct or circumstantial." *People v. Norris*, 399 Ill. App. 3d 525, 531 (2010).

¶ 29    "A person commits the offense of kidnapping when he or she knowingly and secretly confines another against his or her will, or by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against his or her

will***." 720 ILCS 5/10-1(a)(1), (2) (West 2004). "A person commits the offense of aggravated kidnapping when he or she commits kidnapping and *** commits another felony upon his or her victim." 720 ILCS 5/10-2 (West 2004). The State predicated the aggravated kidnapping charge on vehicular hijacking. Thus, vehicular hijacking constituted both an element of aggravated kidnapping and a distinct offense. "A person commits vehicular hijacking when he or she knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." *Id*. § 18-3(a). At trial, the State proved defendant guilty beyond a reasonable doubt of vehicular hijacking on a theory of legal accountability.

¶ 30    "A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." *Id*. § 5-2(c). Section 5-2(c) of the Criminal Code of 2012 incorporates the common-design rule. *People v. Fernandez*, 2014 IL 115527, ¶ 13. To prove the defendant possessed the intent to promote or facilitate a crime, the State may present evidence that either (1) the defendant shared the criminal intent of the principal, or (2) there was a common criminal design. *Id*. ¶ 13. "The common-design rule provides that where two or more persons engage in a common design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts." *In re W.C.*, 167 Ill. 2d 307, 337 (1995). "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." *Id*. at 338. "A common design can

be inferred from the circumstances surrounding the perpetration of the unlawful conduct." *People v. Petrov*, 2023 IL App (1st) 160498, ¶ 96.

¶ 31    *People v. Kessler*, 57 Ill. 2d 493 (1974), provides a textbook application of the common-design rule. *Fernandez*, 2014 IL 115527, ¶ 14. In *Kessler*, three men, including the defendant, conspired to burglarize a tavern after hours. *Kessler*, 57 Ill. 2d at 494. The defendant waited outside in the front passenger seat of the car while the other two unarmed men entered the tavern. *Id*. Inside, one of the men acquired a firearm and shot the tavern owner, wounding him. *Id*. All three men then fled the tavern in the car, prompting a police pursuit. *Id*. at 495. The police forced the fleeing car off the road and into a ditch. *Id*. Defendant remained in the car while the other two men fled on foot. *Id*. One of the two men shot at a pursuing police officer. *Id*. The defendant was arrested and found guilty of both the burglary and the attempted murders of the tavern owner and the pursuing police office. *Id*. at 493-94.

¶ 32    The defendant appealed, and the appellate court reversed his attempted murder convictions. *People v. Kessler*, 11 Ill. App. 3d 321, 328 (2nd Dist. 1973). The Second District determined that the defendant could not be found guilty on accountability principles without the specific intent to commit the attempt murders perpetrated by the other men. *Id*. at 325. The Second District held that "application of the 'common design' principle is not justified by the language of section 5-2 to hold a defendant accountable for crimes committed by an accomplice which the defendant was not shown to have intended." *Id*. at 327.

¶ 33    Our supreme court reversed the Second District and rejected its reasoning. *Kessler*, 57 Ill. 2d at 497. Our supreme court held, "We believe [section 5-2], as it reads, means that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word 'conduct' encompasses any criminal act done in

furtherance of the planned and intended act." *Id*. Our supreme court concluded that once the defendant agreed to participate in the burglary, he was legally accountable for the conduct of his accomplices "in connection therewith", which included the unplanned shootings. *Id*. at 499.

¶ 34       Defendant admitted his involvement in the kidnapping, stating to Barich that he intended to assist Chinaman in kidnapping Threat to settle a debt. The evidence also established that defendant grabbed and pulled Threat into the van, and both Threat and Begeske identified him as the individual involved in the kidnapping. On appeal, defendant argues that his statement to Barich did not include a plan to steal the SUV, but this is irrelevant. Even without the statement, the evidence supports a reasonable inference of a coordinated plan between defendant, Chinaman, and Carradine to kidnap Threat. *Petrov*, 2023 IL App (1st) 160498, ¶ 96. Once involved in the kidnapping, defendant became accountable for any subsequent criminal acts related to it. Defendant also claims that he is not accountable for the vehicular hijacking because it occurred after the kidnapping and he was already driving the van. This argument contradicts established case law. In *Kessler*, the defendant was not involved in the shootings, as he was seated in the front passenger seat, and the shootings were unplanned. *Kessler*, 57 Ill. 2d at 494-95. In fact, his accomplices did not initially have firearms when they entered the tavern. *Id*. However, the Illinois Supreme Court held that once the defendant agreed to participate in the burglary, he was accountable for all acts committed by his accomplices in connection with it, including the unplanned shootings. *Id*. at 499. Similarly, once defendant participated in the kidnapping, he became legally accountable for any criminal conduct committed by his accomplices throughout the kidnapping, including the vehicular hijacking.

¶ 35    Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found defendant guilty beyond a reasonable doubt of vehicular hijacking based on a theory of accountability.

¶ 36                    Ineffective Assistance of Counsel

¶ 37    Defendant argues that trial counsel provided ineffective assistance of counsel for failing to use a peremptory strike on juror B. Skinner, and for failing to challenge a substantial number of jurors. The State argues that trial counsel did not provide deficient performance since all the jurors indicated that they would be fair and impartial. Additionally, the State contends that defendant did not establish prejudice since the evidence was overwhelmingly against defendant.

¶ 38    To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. *Id*. at 694. A defendant's failure to establish either prong is fatal to his claim. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 39    A criminal defendant has a right to an impartial jury and a fair trial. U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, § 8. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined prior to the proceeding." *People v. Jones*, 2012 IL App (2d) 110346, ¶ 71. "*Voir dire* is conducted to assure the selection of an impartial jury, free from bias or prejudice, and grant counsel an intelligent basis on which to exercise peremptory challenges." *People v. Dixon*, 382 Ill. App. 3d 233, 243

(1st Dist. 2008). A juror is considered impartial if they can lay aside their impression or opinion and render a verdict based on the evidence presented in court. *People v. Taylor*, 101 Ill. 2d 377, 390 (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). Generally, trial counsel's conduct during *voir dire* involves matters of trial strategy that are generally not subject to scrutiny under *Strickland*. *People v. Metcalfe*, 202 Ill. 2d 544, 562 (2002). Reviewing courts should hesitate to second-guess counsel's strategic decisions, even if questionable, since attorneys consider many factors when deciding which jurors to challenge or accept. *Jones*, 2012 IL App (2d) 110346, ¶ 71.

¶ 40    In *Jones*, prospective juror J. Williams informed the circuit court that her uncle had been a police officer, and she would give more credibility to a police officer's testimony than defendant's testimony. *Id.* ¶ 12. Another prospective juror, J. Glees, then disclosed that he also believed that a police officer was more credible than any other citizen. *Id.* After this exchange, defense counsel indicated that he was "going to show cause." The court asked J. Williams whether she could be fair and impartial, and she said no. *Id.* The court excused J. Williams for cause and told defense counsel to continue. *Id.* Defense counsel stated, "Oh, I guess—I'm sorry," and then questioned a replacement prospective juror. *Id.* Defense counsel later used a peremptory challenge on a different juror. *Id.* J. Glees was accepted as a juror. *Id.* The jury found the defendant guilty, and the defendant appealed. *Id.* ¶ 44. On appeal, the defendant argued that defense counsel was ineffective for failing to strike J. Glees. The *Jones* court reasoned that the totality of J. Glees responses showed that he could be fair and impartial, and therefore, it was a matter of trial strategy that defense counsel accepted him as a juror. *Id.* ¶ 73. The *Jones* court also noted other cases considered defense counsel's failure to remove a juror a matter of trial

strategy even when the juror made considerably stronger statements about their potential bias. *Id.* ¶¶ 74-76.

¶ 41    Similar to *Jones*, the totality of B. Skinner's responses indicated that she could be fair and impartial. She affirmed that she would be able to return a verdict of guilty or not guilty based on the evidence presented at trial. She stated that her personal relationships with police officers would not affect her impartiality. Although B. Skinner initially indicated she would give a police officer's testimony more credibility, she later agreed to set aside that view and fairly consider all the evidence. *Taylor*, 101 Ill. 2d at 390. Given the totality of her responses, B. Skinner was an impartial juror.

¶ 42    Defendant challenges defense counsel's decision not to use the remaining peremptory strike, given that counsel moved to strike B. Skinner for cause. However, even if counsel's decision is questionable, we should refrain from second-guessing strategic choices. *Jones*, 2012 IL App (2d) 110346, ¶ 71. Defense counsel may have believed that B. Skinner was more likely to be fair and impartial than a potential alternate juror. While defendant highlights one of her responses, B. Skinner also revealed that her uncle had been convicted of federal drug charges, which could have made her more sympathetic to defendant. Regardless of the rationale, since B. Skinner was an impartial juror, defense counsel's decision not to exercise the remaining peremptory challenge did not constitute deficient performance.

¶ 43    Furthermore, assuming *arguendo* that defense counsel's performance was deficient, defendant fails to demonstrate that, but for defense counsel's alleged deficient performance, there was a reasonable probability that the outcome of the trial would have been different. *Metcalf*, 202 Ill. 2d at 562. Given the overwhelming evidence presented at trial, it is difficult to imagine any jury that would find defendant not guilty.

¶ 44　　Defendant further asserts that trial counsel provided ineffective assistance by failing to challenge or remove jurors who had experienced a violent crime or maintained relationships with law enforcement. Again, a juror is considered impartial if they can set aside their impression or opinion and render a verdict based solely on the evidence presented at trial. *Taylor*, 101 Ill. 2d at 390. Here, all the jurors affirmed that their prior experiences with a violent crime or their relationships with law enforcement would not impair their ability to remain fair and impartial. *Supra*, ¶¶ 7-13. Accordingly, defense counsel's decision not to challenge or remove these jurors was not deficient, and there is no reasonable probability that defense counsel's allegedly deficient performance would have affected the outcome of the trial. *Supra*, ¶ 43.

¶ 45　　　　　　　　　　　　　　　Closing Arguments

¶ 46　　Defendant argues that the State's closing argument prejudiced him and deprived him of his right to a fair trial. Specifically, he contends that the State's comments regarding his absence improperly shifted the burden of proof. The State responds that the closing argument did not imply that defendant was required to present evidence, but rather properly commented on defendant's absence.

¶ 47　　"Prosecutors are afforded wide latitude in closing argument." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). In reviewing closing argument comments, we consider whether they engender substantial prejudice against the defendant such that it is impossible to determine whether the guilty verdict resulted from them. *Id*. Misconduct in closing arguments warrants reversal if improper remarks were a material factor in the conviction. *Id*. A new trial is warranted if the jury could have reached a different verdict without the improper remarks or if the reviewing court cannot determine that the remarks did not contribute to the conviction. *Id*.　We review these remarks for abuse of discretion because the trial court overruled the defendant's objections.

*People v. Smith*, 402 Ill. App. 3d 538, 542 (1st Dist. 2010). A defendant generally cannot claim error if the prosecutor's remarks may have been invited by defense counsel's argument. *Id.* at 543.

¶ 48    The defendant contends that this case is analogous to *People v. Euell*, 2012 IL App (2d) 101130. However, in *Euell*, the State explicitly argued that the defendant failed to present evidence supporting his theory of the case. *Euell*, 2012 IL App (2d) 101130, ¶ 20. Despite this, the *Euell* court determined that the improper remarks did not prejudice the defendant because the evidence was not closely balanced, and the comments were not so inflammatory as to deny the defendant a fair trial. *Id*. ¶¶ 21, 23. The only similarity between this case and Euell is that the evidence presented at trial was not closely balanced.

¶ 49    Here, defense counsel invited the State's comments by referring to his client's absence during the trial in his closing argument. *Smith*, 402 Ill. App. 3d at 543. In fact, defense counsel explicitly stated, "the State can argue he is not here *** for whatever reason they want***." Within this context, the State's comments directly responded to the defense's argument, asserting that the defendant did not appear for trial because he could not face his own guilt. Contrary to the defendant's claim on appeal, the State's remarks neither shifted the burden of proof to the defendant nor suggested that he was required to present evidence to rebut the State's case. Therefore, the State's comments were not improper. Although our analysis could conclude here, we also find with certainty that the State's comments were not a material factor in the defendant's conviction. *Supra*, ¶ 43.

¶ 50                                   One-Act, One-Crime Doctrine

¶ 51    Defendant argues that this court should vacate his conviction for vehicular hijacking under the one-act, one-crime doctrine since it is based on the same predicate offense as his

aggravated kidnapping conviction. Defendant acknowledges that he did not preserve this issue for review and seeks review under the plain-error doctrine. The State agrees that defendant's conviction for vehicular hijacking should be vacated under the one-act, one-crime doctrine.

¶ 52     The plain error rule permits a reviewing court to address unpreserved clear errors if the evidence is closely balanced or the error deprived the defendant of a substantial right. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Violations of the one-act, one-crime doctrine are reviewable as second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 53     Under the one-act, one-crime doctrine, a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). A conviction vacated under the one-act, one-crime doctrine does not negate the commission of the vacated offense; it only prohibits multiple punishments for the same act. See *People v. Bailey*, 2013 IL 113690, ¶ 17; see also *People v. Willis*, 2014 IL App (4th) 130118, ¶ 45. To determine whether a violation of the doctrine occurred, we must first ascertain whether defendant's conduct consisted of a single physical act or separate acts. *Coats*, 2018 IL 121926, ¶ 12. An "act" means any overt or outward manifestation which will support a different offense. *King*, 66 Ill. 2d at 566. If defendant committed a single act, multiple convictions based on the act are prohibited. *People v. Brown*, 2018 IL App (3d) 150070-B, ¶ 13. If defendant committed multiple acts, the court then determines whether any of the offenses are lesser-included offenses. *Id*. Multiple convictions are proper if none of the offenses are lesser-included offenses. *Id*.

¶ 54     To determine whether one offense is a lesser-included offense of another, courts employ the "abstract elements" approach which involves examining the statutory elements of the two offenses. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 13. " 'If all of the elements of one

offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second.' " Id. (quoting *People v. Miller*, 238 Ill. 2d 161, 166 (2010). "In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Reveles-Cordova*, 2020 IL 124797, ¶ 13.

¶ 55 Here, vehicular hijacking was the predicate felony underlying the charge of aggravated kidnapping. Aggravated kidnapping wholly encompassed the predicate offense of vehicular hijacking. Thus, vehicular hijacking was a lesser-included offense of aggravated kidnapping, and a conviction for vehicular hijacking cannot stand under the one-act, one-crime doctrine. See *Bailey*, 2013 IL 113690, ¶ 17 (predicate felony underlying felony murder charge is a lesser-included offense); see also *Willis*, 2014 IL App (4th) 130118, ¶ 45 (vacating predicate felony underlying felony murder charge pursuant to one-act, one-crime doctrine). When two convictions violate the one-act, one-crime doctrine, the sentence should be imposed on the more serious offense, and the less serious offense should be vacated. *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 114.

¶ 56 "In determining which offense is the more serious, a reviewing court compares the relative punishments prescribed by the legislature for each offense." *People v. Artis*, 232 Ill. 2d 156, 170 (2009). Aggravated kidnapping is a Class X felony. 720 ILCS 5/10-2(b) (West 2004). Vehicular hijacking is a Class 1 felony. Id. § 18-3. A Class X felony carries a possible sentence of 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2004). A Class 1 felony carries a possible sentence of 4 to 15 years' imprisonment. Id. § 5-4.5-30(a). Accordingly, vehicular hijacking is the less serious offense and should be vacated. *Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 114. Additionally, we direct the circuit court clerk to correct the mittimus to reflect

that defendant was convicted of only one count of aggravated kidnapping. See *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 84; see also *People v. Johnson*, 2014 IL App (1st) 120701, ¶ 31.

¶ 57 We note that although we are vacating the predicate offense of vehicular hijacking, this does not impact defendant's conviction for aggravated battery. See *Bailey*, 2013 IL 113690, ¶ 17; see also *Willis*, 2014 IL App (4th) 130118, ¶ 45. The one-act, one-crime doctrine does not stand for the proposition that a defendant did not commit the other offense; rather, it establishes that the defendant should not be punished twice for a single act.

¶ 58                              CONCLUSION

¶ 59 For the reasons stated above, we affirm defendant's conviction for aggravated kidnapping, vacate his conviction for vehicular hijacking, and direct the clerk of the circuit court of Cook County to correct the mittimus to reflect that defendant was convicted of one count of aggravated kidnapping which carries a sentence of 30 years' imprisonment.

¶ 60 Affirmed in part and vacated in part.