2014 IL App (4th) 130118
NO. 4-13-0118

**FILED**
December 22, 2014
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| TREMAYNE R. WILLIS, | ) | No. 11CF599 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Schmidt, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Holder White and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Tremayne R. Willis, is serving 43 years' imprisonment for first degree

felony murder (720 ILCS 5/9-1(a)(3) (West 2010)) as well as a concurrent term of 15 years'

imprisonment for the predicate felony, aggravated discharge of a firearm (720 ILCS 5/24-

1.2(a)(1) (West 2010)).

¶ 2        Defendant appeals on three grounds:  (1) the trial court erred by refusing to

instruct the jury on reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2010)), which,

he contends, was included in aggravated discharge of a firearm; (2) the court erred by refusing to

instruct the jury on involuntary manslaughter (720 ILCS 5/9-3(a) (West 2010)), which, he

contends, was included in felony murder; and (3) it was a violation of the one-act, one-crime rule

to convict him of both felony murder and the predicate felony of aggravated discharge of a

firearm.

¶ 3        Because we disagree that reckless discharge of a firearm is included in aggravated discharge of a firearm and that involuntary manslaughter is included in felony murder, we find no abuse of discretion in the refusal of the proposed jury instructions on those alternative offenses.  As the State concedes, however, it was a violation of the one-act, one-crime rule to convict defendant of both felony murder and the predicate felony, aggravated discharge of a firearm.  Therefore, we vacate the conviction of aggravated discharge of a firearm, but we otherwise affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5                        A. The Charges Relevant to This Appeal

¶ 6        Count I of the information alleged that on July 4, 2011, defendant committed first degree felony murder (720 ILCS 5/9-1(a)(3) (West 2010)) by doing the following:

> "[D]efendant, without lawful justification, while
> committing a forcible felony, Aggravated Discharge of a Firearm,
> in violation of 720 ILCS 5/24-1.2(a)(1), discharged a firearm at or
> into a building he reasonably should have known to be occupied
> and the firearm was discharged from a place outside the building
> and thereby caused the death of Steven Rogers ***."

¶ 7        Count II alleged that, on the same date, defendant committed aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2010)) by doing the following:

> "[D]efendant knowingly discharged a firearm at or into a building
> located at 2430 North Grand Ave. East, Springfield, Sangamon

County, Illinois, he reasonabl[y] should have known to be occupied and the firearm was discharged from a place outside the building ***."

¶ 8                              B. Evidence in the Jury Trial

¶ 9        In the jury trial, which was held in June 2012, the evidence tended to show the following.

¶ 10        The evening of July 4, 2011, defendant was in downtown Springfield, watching fireworks with his girlfriend, Jamiela Scott, and some friends. After the fireworks were finished, they returned to Scott's house, near the corner of North Stephens Avenue and Ridge Avenue. By that time, it was after 11 p.m. They had some drinks, and they talked.

¶ 11        Defendant asked Scott "if it was cool if [they went] ahead and [shot] the gun in celebration." (We are quoting from defendant's testimony.) He took a semiautomatic rifle out of the trunk of his car. Aaron Miller asked him what he was doing. Defendant replied he "was going to go shoot it at the corner in celebration." Miller got excited, saying he had never "seen an AK before" (referring, evidently, to an AK-47 assault rifle). The two of them walked to the corner.

¶ 12        Beyond some trees, at 2430 North Grand Avenue East, there was an apartment building or, more precisely, a house divided into apartments. Defendant had often passed by that house while driving Scott to work. Various witnesses for the State testified that the house had lighting the evening of July 4, 2011, and that the house was visible from the railroad tracks near the corner of North Stephens Avenue and Ridge Avenue.

¶ 13        In the trial, defendant insisted that when he stood with Miller at the corner of

North Stephens Avenue and Ridge Avenue the night of July 4, 2011, and fired off three shots, he did not fire in the direction of the house. He testified that, instead, he aimed to the right of the house and that he fired upward at a 70- to 80-degree angle, toward a point between a utility pole and a different house, which was abandoned.

¶ 14 Defendant testified that after he fired three shots, Miller took the rifle. Defendant looked to the right to make sure no car was approaching on North Stephens Avenue. By the time he turned back, Miller already had fired three shots. Defendant noticed the rifle was pointing toward the tree line, in the direction of 2430 North Grand Avenue East, and that the rifle was not angled upward. He asked Miller: " [']What are you doing?['] " and he took the rifle from him.

¶ 15 Travis Williams and Valerie Larson shared an apartment at 2430 North Grand Avenue East, and on July 4, 2011, Steven Rogers and Amy Shelabarger came over for a visit. It was 11:30 p.m., and the four of them were sitting in the living room, watching television. Williams, Larson, and Rogers were sitting on the couch.

¶ 16 Williams, Larson, and Shelabarger testified they heard a rapid succession of at least three shots, which sounded different from fireworks. The first round went through a bedroom wall, shaking the house. The second round went through the living room wall, and then through Williams's arm, and then through Larson's left shoulder, and then into Rogers's armpit, fracturing ribs and tearing through both lungs until it came to rest in the muscle tissue of his back. Rogers died from the gunshot wound.

¶ 17 II. ANALYSIS

¶ 18 A. Approaches to Identifying Lesser Included Offenses

¶ 19 The supreme court has identified three possible approaches to determining

whether a lesser offense is included in a greater offense: (1) the abstract elements approach, (2) the charging instrument approach, and (3) the factual approach. *People v. Miller*, 238 Ill. 2d 161, 166 (2010).

¶ 20 When using the abstract elements approach, a court compares statutory elements. *Id.* If all the statutory elements of the lesser offense are included in the greater offense and if the lesser offense has no statutory element that the greater offense lacks, the lesser offense is included in the greater offense. *Id.*

¶ 21 When using the charging instrument approach, a court looks at the charging instrument to determine whether its description of the greater offense provides "a 'broad foundation' or 'main outline' of the lesser offense." *Id.* (quoting *People v. Kolton*, 219 Ill. 2d 353, 361 (2006)). The charging instrument need not explicitly state all the elements of the lesser offense. *Id.* at 166-67. The lesser offense is included if the missing element, though not stated explicitly, can be reasonably inferred from the allegations of the charging instrument. *Id.*

¶ 22 When using the factual approach, a court considers the evidentiary facts adduced in the trial and decides "whether proof of the greater offense necessarily established the lesser offense." *Id.* at 167.

¶ 23 If the question is whether *a charged offense* is included in *another charged offense*, a court should use the abstract elements approach. *Id.* at 173.

¶ 24 If the question is whether *an uncharged offense* is included in *a charged offense*, the court should use the charging instrument approach (*People v. Kennebrew*, 2013 IL 113998, ¶ 32).

¶ 25 In this case, the State did not charge defendant with either reckless discharge of a

firearm (720 ILCS 5/24-1.5(a) (West 2010)) or involuntary manslaughter (720 ILCS 5/9-3(a) (West 2010)). Therefore, we will use the charging instrument approach when deciding whether reckless discharge of a firearm is included in aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2010)) and whether involuntary manslaughter is included in felony murder (720 ILCS 5/9-1(a)(3) (West 2010)). See *Kennebrew*, 2013 IL 113998, ¶ 32.

¶ 26        Because the State charged defendant with both felony murder and aggravated discharge of a firearm, we will use the abstract elements approach to determine whether aggravated discharge of a firearm is included in felony murder. See *Miller*, 238 Ill. 2d at 173.

¶ 27        B. Refusal of the Instruction on Reckless Discharge of a Firearm

¶ 28        Defendant argues that reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2010)) is a lesser offense included in the predicate felony of which he was convicted, aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2010)) and that by refusing his tendered jury instructions on the mental state of recklessness and on reckless discharge of a firearm, the trial court prevented him from presenting a complete defense and thereby deprived him of a fair trial. See *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997).

¶ 29        "Whether a charged offense encompasses an included offense is a matter of law which we review *de novo*." *People v. Landwer*, 166 Ill. 2d 475, 486 (1995). We are in as good a position as the trial court to look at count II of the information, the count charging defendant with aggravated discharge of a firearm, and to decide whether that count provides "a 'broad foundation' or 'main outline' " of reckless discharge of a firearm. *Miller*, 238 Ill. 2d at 166 (quoting *Kolton*, 219 Ill. 2d at 361).

¶ 30        On the one hand, count II alleges as follows: "[D]efendant knowingly discharged

- 6-

a firearm at or into a building located at 2430 North Grand Ave. East, Springfield, Sangamon County, Illinois, he reasonabl[y] should have known to be occupied and the firearm was discharged from a place outside the building ***."

¶ 31 On the other hand, statutory law defines reckless discharge of a firearm as follows: "A person commits reckless discharge of a firearm by discharging a firearm in a reckless manner which endangers the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2010).

¶ 32 Reckless discharge of a firearm has an element that count II lacks, namely, endangering the bodily safety of an individual, and therefore reckless discharge of a firearm is not included in aggravated discharge of a firearm as described in count II. See *People v. Peacock*, 359 Ill. App. 3d 326, 335 (2005). That the building was "occupied," as alleged in count II, does not imply that anyone was endangered by the gunfire. To "occupy" means to "reside in as an owner or tenant." Merriam-Webster's Collegiate Dictionary 802 (10th ed. 2000). If someone resides in a house, that house is occupied even when the person is not home. Thus, just because defendant discharged a firearm at a building he knew or reasonably should have known was occupied, it does not necessarily follow, from that mere allegation, that he endangered anyone.

¶ 33 A hypothetical example will illustrate what we mean. Suppose that, after searching every square inch of a house to confirm that its occupants are still away on vacation, a person fires a round downward, into the floor of the front porch. That person is subject to liability for aggravated discharge of a firearm, even though no one was endangered.

¶ 34 Count II, regarded in itself, gives no basis for inferring that anyone was home, or

that anyone was endangered, when defendant fired at 2430 North Grand Avenue East. Because reckless discharge of a firearm has the element of endangerment and because aggravated discharge of a firearm, as described in count II, does not have that element, we conclude, in our *de novo* review, that reckless discharge of a firearm is not included in aggravated discharge of a firearm, and we find no abuse of discretion in the refusal of defendant's proposed instructions on recklessness and reckless discharge of a firearm. See *Peacock*, 359 Ill. App. 3d at 335.

¶ 35　　　　　C. Refusal of the Instruction on Involuntary Manslaughter

¶ 36　　　　　Defendant argues that involuntary manslaughter (720 ILCS 5/9-3(a) (West 2010)) is a lesser offense included in felony murder and that the trial court therefore abused its discretion and deprived him of a fair trial by refusing his proposed instruction on involuntary manslaughter.

¶ 37　　　　　The State never charged defendant with involuntary manslaughter, and so we are asked to compare an uncharged offense, involuntary manslaughter, to a charged offense, felony murder. Again, this comparison calls for the charging instrument approach. See *Kennebrew*, 2013 IL 113998, ¶ 32 ("This court has held that the charging instrument approach applies when determining whether an uncharged offense is a lesser-included offense of a charged offense.").

¶ 38　　　　　On the one hand, count I, charging defendant with felony murder, alleges as follows: "[D]efendant, without lawful justification, while committing a forcible felony, Aggravated Discharge of a Firearm, in violation of 720 ILCS 5/24-1.2(a)(1), discharged a firearm at or into a building he reasonably should have known to be occupied and the firearm was discharged from a place outside the building and thereby caused the death of Steven Rogers ***."

¶ 39    On the other hand, statutory law defines involuntary manslaughter as follows: "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." 720 ILCS 5/9-3(a) (West 2010).

¶ 40    Because a lesser included offense "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged" (720 ILCS 5/2-9(a) (West 2010)), involuntary manslaughter is included in felony murder, as described in count I, only if count I alleges a mental state as culpable as or more culpable than the mental state of involuntary manslaughter. See *People v. Davis*, 213 Ill. 2d 459, 477 (2004). Article 4 of the Criminal Code of 1961 recognizes four mental states: intent (720 ILCS 5/4-4 (West 2010)), knowledge (720 ILCS 5/4-5 (West 2010)), recklessness (720 ILCS 5/4-6 (West 2010)), and negligence (720 ILCS 5/4-7 (West 2010)). Involuntary manslaughter requires a reckless mental state. 720 ILCS 5/9-3(a) (West 2010). Therefore, involuntary manslaughter can be a lesser included offense only if count I alleges either intent, knowledge, or recklessness. See *Davis*, 213 Ill. 2d at 477.

¶ 41    Defendant argues that felony murder, as described in count I, has the intentional or knowing mental state of the predicate felony, aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2010)). Actually, however, count I neither says nor implies that defendant intentionally, knowingly, or recklessly caused Rogers's death. Granted, a reader of count I would judge the described conduct to be reckless, and the reader would be right, but that would be the judgment of the reader, not the allegation of count I. It is true, of course, that count I

- 9-

references the predicate felony, aggravated discharge of a firearm, saying that defendant caused Rogers's death "while" committing aggravated discharge of a firearm. But it is one thing to say, for purposes of aggravated discharge of a firearm, that defendant knowingly discharged a firearm in the direction of 2430 North Grand Avenue East, and it is quite another thing to say that defendant knowingly caused Rogers's death. Count I, by its terms, does not apply the knowing mental state of the predicate felony to the killing itself.

¶ 42        The only suggestion of a mental state in count I is that defendant "discharged a firearm at or into a building he reasonably should have known to be occupied." The phrase "reasonably should have known" seems to gesture toward a mental state of negligence. And, indeed, the supreme court has interpreted the felony murder statute as requiring that the death be a "direct and *foreseeable* consequence" of the forcible felony. (Emphasis added.) *People v. Lowery*, 178 Ill. 2d 462, 467 (1997). In fact, in its first application of the proximate-cause theory of felony murder, some 80 years ago, the supreme court stated: " '*It reasonably might be anticipated* that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder.' " (Emphasis added.) *Id.* at 465-66 (quoting *People v. Payne*, 359 Ill. 246, 255 (1935)). If this standard of reasonable foreseeability implies any mental state at all, it implies negligence. A defendant who commits felony murder has, at most, a negligent state of mind regarding the prospect of the victim's death. The only arguable *mens rea* of felony murder is negligence: either statutory negligence (720 ILCS 5/4-7 (West 2010)) or common-law negligence (*Peoples Gas Light & Coke Co. v. Joel Kennedy Construction Corp.*, 357 Ill. App. 3d 579, 582 (2005)). See Guyora Binder, *The*

- 10-

*Origins of American Felony Murder Rules*, 57 Stan. L. Rev. 59, 67 (2004) ("According to the Model Penal Code's scheme, the offense of 'foreseeably causing death' is not a strict liability crime, because it requires a culpable mental state—negligence—with respect to the offense's only act element."). But *cf. People v. Phillips*, 383 Ill. App. 3d 521, 546 (2008) (" '[f]elony murder is premised on strict liability for one who kills or is responsible for a killing during the commission of a felony' " (quoting *People v. Hall*, 291 Ill. App. 3d 411, 420 (1997), which predates *Lowery*)).

¶ 43　　　　Therefore, unless a charging instrument, for some inexplicable reason, alleges that the defendant intentionally, knowingly, or recklessly caused the victim's death, it is impossible for involuntary manslaughter to be a lesser included offense of felony murder, because involuntary manslaughter requires a mental state of recklessness, whereas felony murder requires, at most, a less culpable mental state of negligence—or, as *Phillips* holds, no mental state at all. See *Davis*, 213 Ill. 2d at 477.

¶ 44　　　　　　　　D. Vacating the Conviction of the Predicate Felony

¶ 45　　　　The trial court sentenced defendant to 15 years' imprisonment for aggravated discharge of a firearm, ordering that this term of imprisonment run concurrently with the 43 years' imprisonment for felony murder predicated on the aggravated discharge of a firearm. Defendant argues that "[b]ecause the predicate felony underlying a charge of felony murder is a lesser-included offense of the murder, the felony cannot support a separate conviction or sentence." *People v. Bailey*, 2013 IL 113690, ¶ 17. The State agrees, and so do we. Therefore, pursuant to the one-act, one-crime doctrine, we vacate the conviction of aggravated discharge of a firearm as well as the sentence on that conviction. See *People v. Smith*, 233 Ill. 2d 1, 17

(2009).

¶ 46                          III. CONCLUSION

¶ 47        For the foregoing reasons, we vacate the conviction of aggravated discharge of a firearm and the sentence thereon of 15 years' imprisonment.   Otherwise, we affirm the trial court's judgment.  We award the State $75 in costs.

¶ 48        Affirmed in part and vacated in part.