2025 IL App (4th) 241164-U

NO. 4-24-1164

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
August 21, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CHARLES E. JONES, | ) | No. 22CF301 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, holding (1) defendant's trial counsel did not render ineffective assistance by advising him that he had the option of tendering a jury instruction on the lesser-included offense of reckless discharge of a firearm, (2) the trial evidence was sufficient to prove defendant guilty of reckless discharge of a firearm, and (3) defendant lacked standing to challenge the constitutionality of the unlawful possession of a weapon by a felon statute where he was neither charged with nor convicted of that offense.

¶ 2   Defendant, Charles E. Jones, appeals his conviction for reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2022)). Defendant argues that (1) his trial counsel provided ineffective assistance by agreeing with the trial court's "erroneous conclusion" that reckless discharge of a firearm is a lesser-included offense of aggravated discharge of a firearm, (2) the State failed to prove him guilty beyond a reasonable doubt of reckless discharge of a firearm, and (3) the unlawful possession of a weapon by a felon (UPWF) statute (*id.* § 24-1.1(a)), which would criminalize future possession of firearms for him due to his felony conviction in this case,

was unconstitutional on its face and as applied to him. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            A grand jury charged defendant with aggravated discharge of a firearm (*id.* § 24-l.2(a)(2)), "in that [he] knowingly discharged a firearm in the direction of Lakisha A. White." The grand jury also charged defendant with aggravated assault (*id.* § 12-2(c)(2)), in that he discharged a firearm in White's direction, and domestic battery (*id.* § 12-3.2(a)(1)), in that he struck White, a family or household member, in the face.

¶ 5            In May 2024, the trial court held a jury trial. White testified that she had known defendant for approximately 17 years. They had been friends for a long time, and they also had "intimate dealings." On February 6, 2022, White was at her residence, watching videos with her friends. She had consumed approximately three alcoholic beverages that night, and she stated she "may have been" intoxicated. Defendant came over to her residence at approximately 1:30 a.m. Defendant left to deliver a DoorDash order, and he planned to return to White's residence later.

¶ 6            White testified that approximately one hour passed, and defendant had still not returned. White then drove past defendant's house on her way to the store. She saw that he was home, and she pulled into the driveway. She knocked on the front door, but no one answered. She could hear people inside defendant's residence, so she went around the side of the house to his bedroom window. She stated that she normally knocked on defendant's bedroom window to let him know she was there because it was difficult for him to hear a knock at the front door from inside his bedroom. When White arrived at defendant's bedroom window, she "could hear him in there with a female." White began yelling at defendant while she was standing outside the window, asking why he lied to her and telling him she could hear him. White stated she was angry because defendant lied to her and "got caught cheating."

¶ 7     White testified that she and defendant then "kind of argued around to the back door." Defendant walked out of the back door of his house and stood at the gate of a fence enclosing his yard. White stood on the other side of the gate. They argued, and defendant slapped her in the face. She "went to react," and defendant pointed a gun in her face. White told defendant to shoot her. Defendant then fired the gun at least three times. The prosecutor asked White where the gun was pointed at when defendant fired it. She replied: "That I'm unsure of because *** by the time he started firing, I flinched. I was covering so I couldn't really tell you if it was at the ground, at the sky, towards me. I'm not 100 percent sure because by that time I had closed my eyes." White was one to two feet away from defendant when he fired the gun.

¶ 8     White stated she was scared when defendant fired the gun because she thought she could die. When asked if she believed she could be hit by the gunfire, White responded, "At that moment, both of us in that type of situation, anything was possible. It could have been an accident. He didn't have to do it on purpose, but we both was in that situation that was unsafe for both of us." White testified that, after defendant fired the gun, she went to her car and called the police. White stated she had a traffic warrant in another case, and the State had promised her that the warrant would be dismissed if she testified truthfully in the instant case. She also had a prior conviction for disorderly conduct.

¶ 9     Officer Enrique Schaefer of the Rockford Police Department testified he was dispatched to defendant's residence at approximately 4 a.m. on the morning of the incident. Neighbors had reported hearing a man and woman arguing and hearing gunshots. He met with White when he arrived at the residence, and he observed injuries to the right side of her face. Schaefer identified photographs of White's face taken on the day of the incident, and they were admitted into evidence. Schaefer stated that officers collected a handgun and shell casing from

the scene. A video recording from Schaefer's body camera from the day of the incident was admitted into evidence.

¶ 10 Defendant testified that he had been friends with White since 2020, but he had known her for approximately 15 years prior to that. Their relationship was intimate at times, but they were not monogamous. Defendant stated that White was not his girlfriend, and he told her in early 2022 that they were "not going to be together." On the day of the incident, defendant was making DoorDash deliveries in the early morning hours. He made a delivery near White's house, and he then went to her house to smoke a "blunt." After approximately 30 minutes, he left to complete more deliveries. At some later point, defendant ended his work and went home. A female friend came over to his house to talk because she had been fighting with her wife. Defendant did not have an intimate relationship with this friend.

¶ 11 Defendant testified that he later heard a loud sound. He believed someone was trying to break into his bedroom by pushing in his window air conditioner. Defendant panicked and grabbed his firearm. He went to the back door and fired three warning shots into the ground because he thought someone was trying to break into his house. After he fired the shots, White approached him. He asked her what she was doing. She yelled and screamed at him, swung at him, grabbed his clothes, "clawed at" him, and "punch[ed] at" him. He was trying to keep her off of him, and she was trying to get through the gate so that she could enter the house and assault his friend. Defendant told White she could not enter his house and that she should go home. He "muff[ed] her face" at one point while trying to push her back from the gate.

¶ 12 While defendant and White were fighting at the gate, he was still holding his handgun. He did not recall pointing the gun at her, though he said he may have done so while directing her to drop a glass bottle that she had picked up and threatened to hit him with. He did

not fire any shots in her direction or threaten to shoot her in the face. White dropped the bottle and went to her car. Defendant went into the house and locked the door. The police then arrived. Defendant later went outside and observed his air conditioner had been damaged. A photograph of the air conditioner was admitted into evidence.

¶ 13    Defense counsel moved for a directed verdict. The trial court denied the motion but remarked that it was a close case. The court asked defense counsel if he would be seeking a lesser-included offense instruction for reckless discharge of a firearm, and counsel said he would not. The court asked if counsel had discussed that with defendant because it was defendant's decision to make. Counsel stated he had not yet discussed it with defendant, but he would. After conferring with defendant, counsel advised the court that defendant wished for him to tender a jury instruction for reckless discharge of a firearm. The State did not object to the instruction, and the court instructed the jury on the lesser-included offense of reckless discharge of a firearm.

¶ 14    The jury found defendant guilty of reckless discharge of a firearm but not guilty of the remaining offenses.

¶ 15    On August 12, 2024, defense counsel advised the trial court that the parties had reached an agreed disposition as to sentencing. Defense counsel stated:

"[T]he agreed sentence would be that [defendant] would be sentenced to 24 months of conditional discharge on the charge that he was found guilty of, the Class 4 reckless discharge of a firearm. He's ordered not to possess any firearms or dangerous weapons. He's sentenced to 180 days in the county jail. 172 of those are stayed and remittable upon successful completion with conditional discharge. The remainder is satisfied by credit for four days served. He would have no contact with *** White or her residence. And he would—if not already, he would

surrender any rights to the weapon in this charge."

Defense counsel stated that certain fines and fees would also be assessed, and defendant would have to submit a DNA sample since this was his first felony conviction. Defendant stated that this was his agreement concerning the sentence.

¶ 16 After admonishing defendant, the trial court indicated it would accept the agreed sentence. The court entered a written order sentencing defendant to conditional discharge. Two of the enumerated conditions of conditional discharge were that defendant not possess any firearms or dangerous weapons and that he surrender all rights to the weapon used during the offense pursuant to section 24-6(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-6(b) (West 2022)).

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, defendant argues that (1) his trial counsel provided ineffective assistance by agreeing with the trial court's "erroneous conclusion" that reckless discharge of a firearm is a lesser-included offense of aggravated discharge of a firearm, (2) the State failed to prove him guilty beyond a reasonable doubt of reckless discharge of a firearm, and (3) the UPWF statute (720 ILCS 5/24-1.1(a) (West 2022)), which would criminalize future possession of firearms for him due to his felony conviction in this case, was unconstitutional in violation of the second amendment (U.S. Const., amend. II), both on its face and as applied to him. We address each argument in turn.

¶ 20 A. Ineffective Assistance of Counsel

¶ 21 Defendant argues that his trial counsel was ineffective because he "went along with" the trial court's "erroneous conclusion" that reckless discharge of a firearm was a lesser-

included offense of aggravated discharge of a firearm. Defendant contends that counsel erroneously advised him that reckless discharge of a firearm was a lesser-included offense of aggravated discharge of a firearm in this case and that he had the option of tendering a jury instruction on the lesser-included offense. Defendant argues he suffered prejudice because, due to counsel's erroneous advice, he "improperly stands convicted of an offense that does not apply to this case."

¶ 22 To establish a claim of ineffective assistance of counsel, a defendant must show that "(1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90.

¶ 23 Initially, we reject the State's argument that defendant waived his ineffective-assistance-of-counsel argument by inviting any alleged error. The State asserts that defendant, not counsel, chose to request the lesser-included offense instruction and argues that defendant consequently waived any issue concerning the instruction on appeal. See *People v. Carter*, 208 Ill. 2d 309, 319 (2003) ("Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error."). The State is correct that the choice to tender a lesser-included offense instruction belonged to defendant rather than counsel. See *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994). Here, however, defendant is arguing that he chose to tender the instruction based on incorrect legal advice from his attorney. Defendant's ultimate decision to tender the lesser-included offense instruction did not somehow result in a waiver of his right to receive competent and accurate advice from his attorney concerning this decision in the first place, and,

- 7 -

accordingly, we find the invited error doctrine does not preclude defendant's argument.

¶ 24　　However, we find defendant has not shown that his counsel's performance fell below an objective standard of reasonableness where counsel advised him that he had the option of tendering a jury instruction on reckless discharge of a firearm based on that offense constituting a lesser-included offense of aggravated discharge of a firearm in this case.

¶ 25　　Generally, a defendant may not be convicted of an offense for which he has not been charged. *People v. Ceja*, 204 Ill. 2d 332, 359 (2003). "However, a defendant may be convicted of an uncharged offense if it is a lesser-included offense of a crime expressly charged in the charging instrument and the evidence adduced at trial rationally supports a conviction on the lesser-included offense and an acquittal on the greater offense." *People v. Clark*, 2016 IL 118845, ¶ 30. Section 2-9(a) of the Code (720 ILCS 5/2-9(a) (West 2022)) provides than an included offense is an offense which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged."

¶ 26　　When determining whether an uncharged offense is a lesser-included offense of a charged offense, courts employ the "charging instrument approach." *Clark*, 2016 IL 118845, ¶ 31. Under this approach, courts must first determine whether the charging instrument "describes the lesser offense." *Ceja*, 204 Ill. 2d at 360. "Second, if the charging instrument identifies a lesser-included offense, evidence adduced at trial must rationally support the conviction on the lesser-included offense." *People v. Baldwin*, 199 Ill. 2d 1, 6 (2002). That is, "[a] court must examine the evidence presented and determine whether the evidence would permit a jury to rationally find the defendant guilty of the lesser-included offense, but acquit the defendant of the greater offense." *Ceja*, 204 Ill. 2d at 360.

¶ 27　　　　We first consider whether the indictment in this case described the offense of reckless discharge of a firearm. *Id.* To meet this standard, the charging instrument must, at a minimum, "contain a broad foundation or main outline of the lesser offense." *Id.* The charging instrument is not required to explicitly state all of the elements of the lesser offense as long as the missing elements "can be reasonably inferred from the allegations included." *Clark*, 2016 IL 118845, ¶ 31. Determinations as to whether particular offenses are lesser-included offenses must be made on a case-by-case basis, using the factual description of the charged offense in the charging instrument. *Id.*

¶ 28　　　　Here, the indictment charged defendant with aggravated discharge of a firearm in that he "knowingly discharged a firearm in the direction of *** White." The elements of reckless discharge of a firearm are that the defendant (1) "discharge[ed] a firearm in a reckless manner" and (2) in doing so, "endanger[ed] the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2022). Section 4-6 of the Code (*id.* § 4-6) provides that a person is "reckless" when he or she "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation."

¶ 29　　　　Courts have held that reckless discharge of a firearm is a lesser-included offense of aggravated discharge of a firearm in cases where the defendant is alleged to have fired at a person. See *People v. Shelly*, 2024 IL App (3d) 220432, ¶ 39 ("Where *** the defendant is alleged to have fired at a person, reckless discharge of a firearm is a lesser[-]included offense of aggravated discharge of a firearm, the operant difference being the mental state required to prove each offense."); *People v. Matias*, 2023 IL App (2d) 220445-U, ¶ 40; see also *People v.*

*Williams*, 293 Ill. App. 3d 276, 281 (1997) (holding that reckless conduct was a lesser-included offense of aggravated discharge of a firearm where the defendant was alleged to have knowingly fired a pistol in the direction of another). This is because "discharging a firearm in the direction of another person would necessarily endanger, at the very least, the bodily safety of that person," and recklessness is a less culpable mental state than knowledge. *Matias*, 2023 IL App (2d) 220445-U, ¶ 40; see *Williams*, 293 Ill. App. 3d at 281 ("The act of discharging a pistol in the direction of an individual is a reckless act that would, if nothing else, endanger the safety of an individual.").

¶ 30          Similarly, in this case, we find the facts alleged in the indictment set forth a "broad foundation" or "main outline" of the offense of reckless discharge of a firearm. *Ceja*, 204 Ill. 2d at 360. The conduct charged in the indictment, *i.e.*, discharging a firearm in White's direction, would necessarily endanger her bodily safety. Moreover, aggravated discharge of a firearm required proof that defendant acted knowingly, while reckless discharge of a firearm required the less culpable mental state of recklessness. See *People v. Lane*, 2017 IL App (1st) 151988, ¶ 15 ("[A]n allegation of recklessness may be inferred from an allegation of knowledge, since knowledge is a more culpable mental state than recklessness.").

¶ 31          Having found that the indictment in this case described the offense of reckless discharge of a firearm, we next consider whether the trial evidence "would permit a jury to rationally find the defendant guilty of the lesser-included offense, but acquit the defendant of the greater offense." *Ceja*, 204 Ill. 2d at 360.

¶ 32          We find that, based on the evidence presented at trial, the jury could have reasonably found defendant not guilty of aggravated discharge of a firearm but guilty of reckless discharge of a firearm. White testified that defendant pointed a gun at her while they were

- 10 -

arguing and then discharged it at least three times while standing close to her. She stated that she did not know whether the gun was pointed at her when defendant fired it because her eyes were closed and that it was possible the gun was pointed at the ground or up in the air. Based on this testimony, the jury could have rationally found that this evidence did not establish that defendant knowingly discharged a firearm in White's direction, but it did establish that defendant discharged a firearm in a reckless manner that endangered White's bodily safety. That is, the jury may have found that White's testimony did not establish that defendant actually aimed the gun at her but that she nevertheless was at risk of injury due to her close proximity to defendant when he fired the gun.

¶ 33        In reaching our holding, we reject defendant's argument that, because the jury did not find that he fired the gun in White's direction, it must have found that the gunfire endangered people other than White. Defendant contends that he could not be convicted of endangering anyone other than White because the charging instrument identified only White as the victim. However, as we have discussed, the jury could have rationally found that defendant endangered White's bodily safety when he fired the gun but that the evidence did not establish that he aimed it at her.

¶ 34        We also reject defendant's reliance on *People v. Willis*, 2014 IL App (4th) 130118, in support of his argument that reckless discharge of a firearm was not a lesser-included offense of aggravated discharge of a firearm in this case. In *Willis*, the defendant was charged with aggravated discharge of a firearm for discharging a firearm at or into a building that he reasonably should have known to be occupied. *Id.* ¶ 30. The *Willis* court found that reckless discharge of a firearm was not a lesser-included offense of aggravated discharge of a firearm as charged in that case because the mere allegation that the building was occupied did not imply

- 11 -

that anyone was endangered by the gunfire. *Id.* ¶ 32. The court stated that if someone resides in a building, it is considered "occupied," whether or not the person is presently there. *Id.* In this case, on the other hand, the indictment alleged that defendant fired a gun in the direction of a person. Unlike in *Willis*, such an allegation implies that the gunfire endangered the bodily safety of the individual the defendant allegedly fired at. See *supra* ¶¶ 29-30.

¶ 35     Thus, reckless discharge of a firearm was a lesser-included offense of aggravated discharge of a firearm in this case. Accordingly, counsel did not perform deficiently by advising defendant that he had the option of requesting that the jury be instructed on reckless discharge of a firearm, and defendant's claim of ineffective assistance of counsel fails.

¶ 36                              B. Sufficiency of the Evidence

¶ 37     Defendant next argues that the trial evidence was insufficient to prove him guilty beyond a reasonable doubt of reckless discharge of a firearm. Specifically, defendant argues the State failed to prove that he endangered the bodily safety of an individual when he fired his gun. Defendant contends that the "credible evidence in this case" showed that he fired three warning shots into the ground near his back door because he thought someone was trying to break into his house. He asserts that the jury's verdicts of not guilty on the offenses of aggravated discharge of a firearm, domestic battery, and aggravated assault showed that it "obviously did not believe" White's testimony that he slapped her, pointed a gun at her, and then fired it.

¶ 38     When considering a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). As previously discussed, the elements

of reckless discharge of a firearm are that a defendant (1) "discharge[ed] a firearm in a reckless manner" and (2) in doing so, "endanger[ed] the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2022).

¶ 39          Initially, we note that defendant's argument that the evidence was insufficient to prove him guilty of reckless discharge of a firearm is at least arguably inconsistent with the position he took in the trial court by requesting that the jury be instructed on reckless discharge of a firearm as a lesser-included offense. See *People v. Medina*, 221 Ill. 2d 394, 408 (2006) ("If a defendant tenders a lesser-included offense instruction, the defendant is arguing, in essence stipulating, that the evidence is such that a jury could rationally convict him of the lesser-included offense, and he is exposing himself to potential criminal liability, which he otherwise might avoid.").

¶ 40          In any event, we find the trial evidence, viewed in the light most favorable to the State, was sufficient to prove defendant guilty beyond a reasonable doubt of reckless discharge of a firearm. A rational jury could have found that defendant fired a gun in a reckless manner that endangered White's bodily safety based on White's testimony that, during an argument, defendant slapped her, pointed a gun at her, and fired the gun three times while standing one to two feet away from her. The jury was not required to instead accept defendant's testimony that he fired three warning shots into the ground by his back door before he even saw White.

¶ 41          To the extent that defendant is arguing that the jury must necessarily have made certain factual findings and credibility determinations concerning the trial evidence based on its not guilty verdicts for the three charged offenses, we decline defendant's invitation to speculate as to the jury's thought processes. See *United States v. Powell*, 469 U.S. 57, 67 (1984) ("Courts have always resisted inquiring into a jury's thought processes [citations]; through this deference

the jury brings to the criminal process *** an element of needed finality."). Even if the jury's not guilty verdicts for the other three offenses were arguably inconsistent with its guilty verdict for reckless discharge of a firearm, there is no way to know whether the acquittals represented the jury's true findings or were merely an exercise of lenity. See *People v. Jones*, 207 Ill. 2d 122, 132-34 (2003).

¶ 42                    C. Second Amendment Challenge

¶ 43        Defendant next argues that his conviction for reckless discharge of a firearm, his first felony conviction, should not deprive him of the right to possess firearms in the future. Specifically, defendant argues that we should hold that section 24-1.1(a) of the Code (720 ILCS 5/24-1.1(a) (West 2022)), which describes the criminal offense of UPWF, is unconstitutional on its face and as applied to him because it violates his right to keep and bear arms as set forth in the second amendment to the United States Constitution (U.S. Const., amend. II). Defendant contends that because section 24-1.1(a) of the Code is unconstitutional, both that statute and the trial court's order requiring him to turn over his firearm and prohibiting him from possessing firearms "going forward" cannot be enforced.

¶ 44        The State argues that defendant lacks standing to challenge the constitutionality of section 24-1.1(a) of the Code because he was neither charged nor convicted under that section. Defendant does not respond to the State's standing argument.

¶ 45        "One has standing to challenge the validity of a statute if he has sustained or if he is in immediate danger of sustaining some direct injury as a result of enforcement of the statute." *People v. Mayberry*, 63 Ill. 2d 1, 8 (1976). Our supreme court has held that individuals neither sustain nor are in immediate danger of sustaining direct injury as a result of the enforcement of a criminal statute until they are charged with violating it. See *People v. Olender*, 222 Ill. 2d 123,

- 14 -

130-31 (2005); see also *People v. Minnis*, 2016 IL 119563, ¶ 13 ("[A] court will not consider[ ] a constitutional challenge to a criminal statutory provision under which a defendant has not been charged."). Here, defendant was neither charged with nor convicted of UPWF. Accordingly, we find that he does not have standing to challenge the constitutionality of section 24-1.1(a) of the Code in this appeal.

¶ 46 We also reject defendant's argument that the trial court's sentencing order, which required him to surrender the firearm used in the offense and refrain from possessing firearms, was unconstitutional. The crux of defendant's constitutional argument is that the permanent deprivation of his right to possess firearms due to his felon status violated his second-amendment rights. However, the sentencing order did not order defendant to refrain from possessing firearms indefinitely pursuant to section 24-1.1(a) of the Code, as defendant's argument appears to assume. Rather, the court imposed a 24-month term of conditional discharge, which included, *inter alia*, the conditions that defendant: (1) not possess firearms or dangerous weapons pursuant to section 5-6-3(a)(3) of the Unified Code of Corrections (730 ILCS 5/5-6-3(a)(3) (West 2022)) and (2) surrender the weapon used during the commission of the offense pursuant to section 24-6(b) of the Code (720 ILCS 5/24-6(b) (West 2022)). Defendant agreed to this sentence, including the conditions related to firearms. Moreover, he does not challenge the constitutionality of either section 5-6-3(a)(3) of the Unified Code of Corrections or section 24-6(b) of the Code in this appeal. Accordingly, we find defendant's arguments concerning the constitutionality of the UPWF statute to be inapposite to the sentencing order in this case.

¶ 47                                    III. CONCLUSION

¶ 48 For the reasons stated, we affirm the trial court's judgment.

¶ 49 Affirmed.