NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 241521-U

NO. 4-24-1521

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| TONY HARRIS, | ) | No. 12CF910 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court reversed and remanded for a new trial, finding the trial court
committed plain error when it refused to tender a jury instruction for the
lesser-included uncharged offense of reckless discharge of a firearm.

¶ 2     In 2018, a jury convicted defendant, Tony Harris, of aggravated discharge of a

firearm (720 ILCS 5/24-1.2(a)(3) (West 2012)). In 2024, he was sentenced to 25 years'

imprisonment. On appeal, he argues the trial court committed plain error by refusing to tender a

jury instruction for the lesser-included uncharged offense of reckless discharge of a firearm (*id.*

§ 24-1.5(a)). We agree and reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4     In August 2012, defendant was charged with attempted first degree murder (*id.*

§ 8-4(a), 9-1(a)(1) (West 2012)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(3)), and

aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)). *People v. Harris*, 2017 IL App (3d)

140661-U, ¶ 4. Prior to trial, the State dismissed the aggravated unlawful use of a weapon charge. *Id.* Following a jury trial in November 2013, defendant was found guilty of both attempted first degree murder and aggravated discharge of a firearm. *Id.* ¶ 40. On direct appeal, the appellate court found the trial court had failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and remanded for a new trial. *Harris*, 2017 IL App (3d) 140661-U, ¶ 63. The matter proceeded to a new trial in July 2018. Defendant does not challenge the sufficiency of the evidence; accordingly, we only summarize the facts necessary for the issues raised on appeal.

¶ 5                                     A. Jury Trial

¶ 6             Peoria police officer David Logan testified he was driving in his marked police vehicle on the evening of August 17, 2012. He observed an individual named Auston Wood in front of a convenience store, so he entered the parking lot to speak with Wood. Logan also observed defendant walking "30 feet behind" Wood. He recalled Wood raising his shirt to show his waistband area. Logan stated he only wanted to speak with Wood and when he exited his vehicle, Wood ran away. He chased after Wood but lost sight of him. As Logan was walking down an alleyway looking for Wood, he "heard three gunshots and saw three muzzle flashes." Logan said the muzzle flashes came from behind the convenience store or the "back corner" of the adjacent residence. He estimated the muzzle flash was "40 yards" away.

¶ 7             On cross-examination, Logan said he stepped into an "illuminated area" and was "looking into a dark area" when he saw the muzzle flashes. He did not observe any details from the area of the muzzle flashes. He recalled the muzzle flashes occurred at "a height of about four feet." He did not recall hearing any sounds after the gunshots, such as bullets striking nearby or whizzing by him. Following the incident, Logan stated the area where he was standing was

searched and no bullets were recovered. On redirect examination, Logan confirmed a gun and cartridge cases were recovered from the scene.

¶ 8        Wood testified that on the night of the incident, he was at the convenience store with several other individuals, including defendant. He remembered Officer Logan attempting to speak with him near the convenience store, and he ran away. He recalled running into the alleyway and eventually to his aunt's home a block away. He stated he did not see Logan again after he fled to his aunt's home. Wood said he spoke with defendant after the incident but did not recall the conversation. He only remembered defendant said "he shot."

¶ 9        Whitney Parrott testified she was with both Wood and defendant on the date of the incident. She recalled Officer Logan arriving at the convenience store and Wood fleeing. After Wood fled, Parrott said defendant grabbed a gun out of her purse that Wood had put in there earlier that day. After defendant took the gun, Parrott went into the store and made a purchase and then heard gunshots. She later stated she heard the gunshots before she went into the store. Parrott said she was walking down the street after hearing the gunshots when she encountered defendant. Defendant told Parrott he heard the gunshots and that "it wasn't the police [shooting]; it was him."

¶ 10        Prior to Reginald Anderson testifying, the State sought to preclude defendant from impeaching Anderson's testimony on the basis he had been offered a plea deal in his own case to testify on behalf of the State. The State argued Anderson had already testified in the first trial, thereby completing his plea deal, and he was not offered anything for his testimony at the second trial. Alternatively, the State argued if defendant sought to impeach Anderson on the basis of the initial plea offer, the State should be permitted to have Anderson discuss being "jumped and beaten up" for testifying at defendant's first trial. Defendant disagreed and noted

the State had not previously informed him of Anderson having been attacked for his testimony at the first trial, which would have allowed the defense to investigate the allegations. The trial court ruled Anderson could not be impeached by the existence of a plea deal for his testimony at the first trial. The court also ruled the State could not bring up that Anderson was "beaten for being a snitch."

¶ 11        Anderson testified that on September 16, 2013, he was in custody at the Peoria County jail for retail theft. Anderson stated he was at the courthouse, waiting for his case in a holding area called "the bullpen" with defendant. Anderson recalled hearing defendant tell another individual "he had busted at the police." Anderson clarified "busted" meant shot. He also recalled defendant discussing two girls and disposing of the gun near a store.

¶ 12        Peoria police officer Keith McDaniel testified he was escorting defendant through the police station when defendant volunteered, "It was an easy shot. If I want[ed] to kill him, I could have killed him."

¶ 13        Following McDaniel's testimony, a transcript of defendant's testimony from the first trial was admitted, without objection, into evidence. Within the transcript, defendant said he was playing basketball on August 17, 2012, with Wood. He recalled a confrontation with Wood ensuing over $2,500 he had given Wood to purchase drugs. Wood pulled out a gun at defendant during the confrontation. Defendant said he stepped back and Wood then placed the gun in Parrott's purse. The group later walked to the convenience store, and defendant observed Logan arrive in his police vehicle. He said Wood ran and Logan chased after him. Defendant said he took the gun from Parrott's purse to hide it from police when he saw Wood near the back of the convenience store and an adjacent residential property. Wood gave defendant his $2,500, and defendant gave Wood the gun. Defendant stated he was walking toward the front of the store

- 4 -

when he heard three gunshots behind him. He stated numerous times he did not look behind him after hearing the gunshots. He also recalled his interview with McDaniel and denied volunteering to McDaniel that he could have shot at Logan. He also denied admitting to shooting at a police officer in front of Anderson while in custody at the Peoria County Courthouse.

¶ 14 On cross-examination, defendant said, "[I]f you look at the evidence, the officer was never shot at. [Wood] shot in the air." On redirect examination, he conceded he did not personally observe Wood shoot the gun.

¶ 15 The State rested. Defendant moved for a directed verdict, which the trial court denied.

¶ 16 During a jury instruction conference, defendant tendered instructions for reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2012)). The State objected, arguing it was not a lesser-included offense because it contained an inconsistent mental state with the pending charges of attempted first degree murder and aggravated discharge of a firearm. The trial court denied the tendered jury instruction, stating, "Defendant has now got the gun, he's at the corner of the store there at the dumpster where he can see the officer, three shots are fired, and for [the court] to find that those are reckless is a leap [it is] not willing to make."

¶ 17 Defendant rested.

¶ 18 During closing arguments, the State sought to preemptively rebut defendant's anticipated argument that just because Officer Logan was not struck by any bullets, nor were any recovered near him, it did not mean defendant did not intend to shoot at Logan. The prosecutor stated:

> "Officer Logan testified that he saw a burst of light—three bursts
> of lights within under two seconds. Officer [Dustin] Johnson from

the crime lab testified that if it was straight on, it would look like a burst of light like a firecracker. That's what Officer Logan said he saw, which adds to the straight on.

Officer Logan also testified that the height of the shots or the bursts of light were about four feet. Now, if you're going to shoot up in the air or somewhere to the side, first of all, you wouldn't see the burst of light if it was to the side, You'd see light but not the burst. If it was up above, it would be higher than four feet. You don't shoot above you from your chest area."

The State also contended there were "four individual witnesses who stated that the Defendant said to them that he either shot the gun or that he shot at an officer." The State subsequently described the testimonies of Wood, Parrott, McDaniel, and Anderson.

¶ 19        During rebuttal closing argument, the State again argued:

"Logan also told you that he saw those muzzle flashes, and those muzzle flashes looked like a burst of light. That's what Dustin Johnson told you a muzzle flash would look like if it's coming at you, a burst of light. He said it would be a cone or a line of light."

Defendant objected, arguing the State's argument mischaracterized the evidence. Rather than issue a definitive ruling on defendant's objection, the trial court addressed the jury:

"What I will say, Jury, I'm thinking about where the instruction is that says you heard the evidence, you heard what— the two people the Prosecutor is talking about what they said. It might be in your notes. If not your notes, then hopefully it's in

your heads. You use that to determine whether a

mischaracterization is being made."

The court then read an instruction to the jury that they were the only judges of credibility and weight of the witnesses' testimonies.

¶ 20　　　　The jury returned a not guilty verdict as to attempted first degree murder and a guilty verdict as to aggravated discharge of a firearm.

¶ 21　　　　　　　　　　B. Posttrial Proceedings

¶ 22　　　　Following a sentencing hearing in October 2018, the trial court sentenced defendant to 30 years' imprisonment. Defendant filed a motion to reconsider sentence. In November 2018, defendant filed a *pro se* posttrial motion alleging ineffective assistance of counsel. In November 2022, a different attorney representing defendant explained how defendant's case file had been neglected for several years. The parties reconvened in March 2023 and agreed a new sentencing hearing should be conducted. Additionally, the court requested defendant's trial counsel come before the court for questioning regarding defendant's ineffective assistance claims.

¶ 23　　　　At a hearing in July 2023, the State said defendant's trial counsel had passed away. Defendant ultimately elected to proceed *pro se*. In August 2024, defendant filed a *pro se* motion for dismissal or a new trial alleging numerous constitutional violations. In October 2024, following a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), the trial court denied defendant's motion, stating that even if defendant's trial counsel had performed "arguably ineffective[ly]," the evidence was not closely balanced, so no prejudice resulted, and it attributed counsel's decisions to trial strategy.

¶ 24　　　　Following a new sentencing hearing, defendant was sentenced to 25 years'

imprisonment. Defendant subsequently filed a motion to reconsider sentence, which the trial court denied.

¶ 25        This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27        On appeal, defendant argues (1) the trial court committed plain error by refusing to tender a jury instruction for the lesser-included offense of reckless discharge of a firearm, (2) the court erred by precluding defendant from cross-examining Anderson regarding his plea agreement in exchange for his testimony, (3) he was denied a fair trial due to the State's repeated mischaracterization of the evidence during closing arguments, and (4) the court erred when denying his ineffective assistance of counsel claims. For the reasons that follow, we agree with defendant's first contention.

¶ 28        Defendant's first contention is the trial court erred when refusing to tender a jury instruction for reckless discharge of a firearm as a lesser-included offense. He argues there was very little evidence purporting to show he knowingly discharged a firearm at Officer Logan. He notes Logan could not identify any details about the shooter other than there were muzzle flashes and no bullets found where Logan took cover. Aside from arguing the State's witnesses were biased, he also argues their testimonies did not corroborate the contention he shot at Logan. For example, he notes Parrott and Wood only testified defendant "shot" a gun. McDaniel testified defendant claimed it was an "easy shot," and had defendant wanted to kill Logan, he "could have killed him." He notes the only evidence showing defendant had fired a gun at Logan was Anderson's vague testimony he overheard defendant say he shot "at the police or something." He notes his own testimony from the first trial contended Wood was the shooter and that he shot the gun in the air. However, he argues the objective evidence failed to show any gunshots were

aimed at Logan, which is consistent with a gunshot in the air. He cites *People v. Jones*, 2025 IL App (4th) 241164-U, in support.

¶ 29    In *Jones*, the defendant was charged with aggravated discharge of a firearm. *Id.* ¶ 4. The victim testified she went to the defendant's home and an argument ensued. *Id.* ¶¶ 6-7. She recalled standing on the other side of a gate—about a foot or two from the defendant—when he pointed a gun at her and then "fired the gun at least three times." *Id.* ¶ 7. The victim was unsure where the gun was pointed when the shots were fired because her eyes were closed. *Id.*

> "When asked if she believed she could be hit by the gunfire, [the victim] responded, 'At that moment, both of us in that type of situation, anything was possible. It could have been an accident. [The defendant] didn't have to do it on purpose, but we both was [*sic*] in that situation that was unsafe for both of us.' " *Id.* ¶ 8.

The defendant testified he heard a noise outside and thought someone was trying to break into his bedroom. *Id.* ¶ 11. "He went to the back door and fired three warning shots into the ground because he thought someone was trying to break into his house." *Id.* He recalled, after he fired the shots, he argued with the victim. *Id.*

¶ 30    The defendant subsequently requested the trial court tender a jury instruction for reckless discharge of a firearm. *Id.* ¶ 13. The jury found defendant guilty of reckless discharge of a firearm. *Id.* ¶ 14. On appeal, the defendant argued his trial counsel was ineffective for advising him to instruct the jury as to reckless discharge of a firearm because it did not apply in his case. *Id.* ¶ 21. This court found the indictment in the case supported reckless discharge of a firearm as a lesser-included offense of aggravated discharge of a firearm. *Id.* ¶¶ 29-35. We found the jury could have rationally concluded the evidence failed to show the defendant knowingly discharged

- 9 -

a firearm in the victim's direction but did discharge the firearm in a reckless manner that endangered the victim's bodily safety. *Id.* ¶ 32. Specifically, "the jury may have found that [the victim's] testimony did not establish that [the] defendant actually aimed the gun at her but that she nevertheless was at risk of injury due to her close proximity to [the] defendant when he fired the gun." *Id.*

¶ 31    Defendant concedes he failed to preserve this issue in a posttrial motion but argues we can consider this issue under the first prong of the plain-error doctrine.

¶ 32    The State argues defendant's testimony from the first trial indicated it was Wood, not him, who had fired the gun. Therefore, he cannot show he fired the gun recklessly, as opposed to knowingly, in the direction of Logan. Additionally, the State contends the evidence was not closely balanced. In particular, the State argues the evidence showed Logan was shot at because the gunshots did not occur until he stepped into an illuminated area. The State also notes the evidence showed the muzzle flashes were observed four feet above the ground, but defendant is five feet, nine inches tall, which refutes any notion the gun was fired in the air. The State also notes the area where the gunshots occurred was residential, which limited the direction of the possible shooting to either in the direction of where Logan took cover or in the direction of numerous homes.

¶ 33    In reply, defendant argues he is entitled to a lesser-included offense instruction regardless of whether it conflicted with his own theory of the case at trial. See *People v. Creamer*, 143 Ill. App. 3d 64, 69 (1986) ("[A] defendant is entitled to [a lesser-included offense] instruction even though it conflicts with his theory of the case.").

¶ 34    The plain-error doctrine provides a "narrow and limited exception" to forfeiture, permitting courts of review to address forfeited claims. *People v. Reese*, 2017 IL 120011, ¶ 72.

Under the plain-error doctrine, a reviewing court may disregard a defendant's forfeiture and consider an unpreserved claim of error where:

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

Under either prong of the plain-error doctrine, the defendant bears the burden of persuasion. *People v. Wilmington*, 2013 IL 112938, ¶ 43. "The first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613.

¶ 35        A defendant is entitled to a jury instruction for an uncharged lesser-included offense when (1) the charging instrument contains factual allegations sufficient to "provide a broad foundation or main outline of the lesser offense" and (2) " 'an examination of the evidence *** reveal[s] that it would permit a jury to rationally find the defendant guilty of the lesser offense yet acquit the defendant of the greater offense.' " *People v. Dillard*, 2025 IL App (4th) 230739, ¶ 89.

¶ 36        We need not address the first issue of whether reckless discharge of a firearm is a lesser-included offense of aggravated discharge of a firearm because the State has conceded this issue. Therefore, we will address the second issue, which requires this "court [to] examine the

evidence presented and determine whether the evidence would permit a jury to rationally find the defendant guilty of the lesser-included offense, but acquit the defendant of the greater offense." *People v. Ceja*, 204 Ill. 2d 332, 360 (2003). The primary distinction between aggravated versus reckless discharge of a firearm is the former requires a person to knowingly or intentionally discharge a firearm in the direction of some person, whereas the latter simply requires a person discharge a firearm in a reckless manner that endangers the bodily safety of another. See 720 ILCS 5/24-1.2(a)(1)-(9) (West 2012); *id.* § 24-1.5(a). "Recklessness" is defined as follows: "A person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow *** and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." *Id.* § 4-6.

¶ 37    Applying the jury-instructions test to the distinct offenses in this case, we must determine whether the facts would rationally support a verdict that defendant recklessly discharged a firearm in such a manner that it endangered the bodily safety of Logan beyond a reasonable doubt while simultaneously finding there was reasonable doubt that defendant knowingly or intentionally discharged his firearm at Logan. Based on our review of the evidence, we believe a jury could rationally find defendant guilty of recklessly discharging a firearm but acquit him of aggravated discharge of a firearm.

¶ 38    First, we find the trial court's failure to permit reckless discharge of a firearm instructions as offered by defendant was error. See *Jones*, 2025 IL App (4th) 241164-U, ¶ 29 (finding reckless discharge of a firearm is a lesser-included offense of aggravated discharge of a firearm). We disagree with the State's contention that because defendant's testimony at his first trial was at odds with reckless discharge of a firearm, there can be no error. "A defendant may be

entitled to an instruction even though it conflicts with his theory of the case." *People v. Hoyt*, 180 Ill. App. 3d 863, 867 (1989). We also disagree with the State's contention the evidence was not closely balanced. Much like the appellate court found following the first trial in this matter (see *Harris*, 2017 IL App (3d) 140661-U, ¶ 63), our review of the evidence in this case finds the evidence was closely balanced. Moreover, there is a distinction between the evidence being closely balanced as to whether defendant discharged a gun at all and whether he discharged it in the direction of Officer Logan. The evidence for the latter was closely balanced.

¶ 39    The testimonies of Wood, Parrott, and McDaniel all corroborated that defendant had discharged a firearm. However, each of these testimonies could be interpreted by a jury as indicating defendant had merely discharged a firearm, rather than fired it in Logan's direction. This is particularly plausible in light of McDaniel's testimony that defendant said he could have shot at Logan but chose not to. Defendant correctly notes there was little to no objective evidence the gunshots were fired in Logan's direction. Anderson's testimony was the only evidence that supported the contention defendant discharged his firearm at Logan. It is entirely rational and within the realm of reasonableness for the jury to disregard or find Anderson's testimony not credible. It is also clear from the jury's verdict in this case that it had given thought to defendant's mental state when it acquitted him of attempted first degree murder; that is, the jury did not find defendant had intended to or took substantial steps toward intentionally killing or causing great bodily harm to Logan. See 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2012). Thus, we can infer from the jury's verdict that had it been given the reckless discharge of a firearm instruction, it may have rationally found defendant recklessly discharged a firearm but did not knowingly or intentionally discharge it in Logan's direction.

¶ 40    Accordingly, we conclude the trial court committed plain error when it refused to

tender a jury instruction for the lesser-included uncharged offense of reckless discharge of a firearm. Therefore, defendant is entitled to a new trial. Because we have granted defendant his requested relief, we need not address the remaining issues in this appeal.

¶ 41                                III. CONCLUSION

¶ 42            For the reasons stated, we reverse the judgment of the trial court and remand the matter for a new trial.

¶ 43            Reversed and remanded.